# Lancaster County National Bank *versus* Moore.

1. Persons not *sui juris* or not having capacity to contract debts are liable for torts and may bind themselves for necessaries.

2. Moore, desiring to borrow money from Stauffer, gave his note to him; it was discounted bonâ fide at a bank for Stauffer, and he gave Moore his check for the amount. An inquest commenced afterwards found Moore a lunatic for a time anterior to the discount of the note; the finding was traversed. The bank had no notice of the finding or of Moore's lunacy. *Held,* in a suit by the bank against Moore, on the note, that under the circumstances the insanity of Moore was not a defence, the contract being executed and without fraud.

3. The inquisition was but primâ facie evidence of insanity.

4. Reports in the neighborhood that Moore was insane, were not evidence in a suit against him by the bank on the note.

May 3d 1875.    Before AGNEW, C. J., SHARSWOOD, MERCUR, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Lancaster county:* No. 26, to May Term 1875.

This was an action of assumpsit, commenced April 15th 1872, by the Lancaster County National Bank, against George H. Moore.

The cause of action was a note, dated December 30th 1871, drawn by defendant in favor of Benjamin M. Stauffer, payable at the Manheim National Bank, for $225; endorsed by Stauffer and protested. The defence was that the defendant was *non compos mentis*.

The case was tried May 22d 1874, before Livingston, P. J.

The plaintiff gave the note, &c., in evidence and rested.

The defendant offered in evidence the record of proceedings in lunacy against Moore, commenced June 5th 1872; the inquest June 28th found that Moore had been a lunatic for three years before the inquisition; the inquisition was confirmed August 19th 1872. John M. Hershey, a creditor of Moore, traversed the inquisition October 25th 1872; a replication was filed December 17th 1873. The offer was objected to by the plaintiffs, admitted by the court and a bill of exceptions sealed.

The defendant rested.

The plaintiff gave evidence by Stauffer, the payee and endorser of the note, that the defendant called on witness to borrow $1000. Witness and defendant went to plaintiff's bank and at the request of witness the cashier drew the note in suit and another for $775; witness endorsed them, and they were discounted by the plaintiff; the witness gave defendant a check for the amount of the $225 note, less the discount on both notes, and also a check for $775, which checks were paid by the plaintiff. Witness testified that the defendant was competent to transact business at that time; that witness had known him for a long time and he was at that day as he always had been, and during all his acquaintance with defendant he had never seen anything to induce him to believe that defendant was of unsound mind.

There was evidence for the plaintiff, by a number of witnesses, that the defendant was competent to transact business, and of facts tending to show his capacity.

The plaintiff rested.

The defendant then offered to prove, that " at the time the note was discounted and for a long time afterwards and ever since, the defendant was *non compos mentis* and did not enjoy lucid intervals."

[Lancaster County National Bank *v.* Moore.]

The offer was objected to by the plaintiff because " the plaintiff is the bonâ fide holder of the note in suit, made by G. H. Moore and endorsed by B. M. Stauffer ; having paid full value therefor Moore actually received the money. That as said bank had no notice of the alleged lunacy of the drawer, and was guilty of no fraud in procuring the same, and no offer is made to prove notice of said lunacy or fraud on the part of the plaintiff, the defendant cannot set up his own insanity as a defence, the contract having been executed by the plaintiff."

The court admitted the offer and sealed a bill of exceptions for plaintiff.

The defendant then gave evidence, by very many witnesses, that for a long time the defendant had been incompetent to transact business.

The defendant proposed to ask Martin M. Brubaker, one of his witnesses, " whether for years back it had not been the current report in the neighborhood that Moore (defendant) was of unsound mind and unfit to do business."

This was objected to by plaintiff, admitted by the court, and a bill of exceptions sealed.

The witness answered the question affirmatively.

Defendant proposed to ask George Diffenderfer, a witness on the stand : "·What was the general report of the neighborhood as to the state of his (defendant's) mind ?"

This was objected to by the plaintiff, admitted by the court and a bill of exceptions sealed.

Witness testified that the people in the neighborhood said that the defendant was simple, &c.

The defendant gave evidence by other witnesses on the same point. There was no evidence that at or before the discounting of the notes the plaintiff had any notice of defendant's incompetency.

The plaintiff's points and the answers were :—

1. The contract in this case on the .part of the bank having been executed, and there having been no notice to the bank of the alleged lunacy on the part of the defendant, and no fraud alleged, the verdict must be for the plaintiff.

Answer : " If the jury find from all the evidence, that George H. Moore, at the time he signed this note in the bank, was of unsound mind, a lunatic, having no lucid interval, the bank cannot recover in this action, notwithstanding it had received no notice of his lunacy, the contract not having been proved to be for necessaries. If he was·of sound mind the verdict should be for plaintiff."

2. If the jury believe that at the time of the execution of the note upon which this suit is brought, the defendant was of sufficient mental capacity to understand what he was doing—was aware that he was giving a note, and knew the legal consequences of his act,

[Lancaster County National Bank *v.* Moore.]

viz., that he was liable for the payment of the same—the verdict must be for the plaintiff.

Answer : " If the jury believe from the evidence, that at the time George H. Moore signed this note in the bank he was of a sound mind, able to distinguish right from wrong, with power to avoid wrong and adhere to the right, and had power to govern his mind, body and estate, with safety to himself and others, and to know the nature of the transaction he was then engaged in, he would be liable, and the verdict should be for the plaintiff. But if the jury believe he was of unsound mind, a lunatic without a lucid interval, the verdict should be for the defendant."

The court, after stating the cause of action, &c., said :—

* * * "[The main question therefore, for your consideration and decision in this case is : was George H. Moore, the defendant, a *lunatic*, without lucid intervals at the time he signed the note in suit, or was he of sound mind and competent to conduct his property and affairs with safety to himself and others ?]"

* * * "[Unsoundness of mind does not relate to a degree of weakness, but incapacity, and the question is, has a defendant been so far deprived of his reason and understanding as to be rendered altogether unfit, and unable to govern himself, and manage his affairs, in this case ; has George H. Moore been deprived of his reason and understanding from any cause whatever, so far as to render him altogether unfit and unable to govern himself or manage his affairs and estate ? and was he so at the time he signed the note upon which this suit is brought to recover from him $225 ? if he was, then there can be no recovery by the plaintiff, there being no evidence that the action is brought for necessaries furnished to the defendant. If therefore you find from all the evidence, that George H. Moore was not a lunatic, at the time he signed the note in suit, but was fit and able to govern himself, and had sufficient power of mind to do business and manage his affairs and estate, with safety to himself and others, then your verdict should be for the plaintiff, for the amount of the note with interest.] Or if you find from all the evidence that George H. Moore was a lunatic before and after signing the note, but on the day, at the time of the act of signing the note in the Lancaster County National Bank, he had a lucid interval, and was then fit and able to govern himself, and had sufficient power to do business and manage his affairs and estate, with safety to himself and others, your verdict should be for the plaintiff for the amount claimed, the note and interest.

" [But, if you, from all the evidence before you, find, and are satisfied that George H. Moore was a lunatic, and so far deprived of his reason and understanding, at the time of signing the note in suit, as to be rendered unfit and unable to govern himself, and manage his affairs and estate with safety to himself and others, then your verdict should be for the defendant.]" * * *

[Lancaster County National Bank v. Moore.]

The verdict was for the defendant.

The plaintiff took a writ of error and assigned for error :—

1. Admitting the record of the proceedings in lunacy against the defendant.

2. Allowing evidence that at the time the notes were discounted the defendant was a lunatic, &c.

3. Allowing evidence that it was the report in the neighborhood that defendant was of unsound mind, &c.

4. Allowing evidence of the general report in the neighborhood as to what was the state of defendant's mind.

5. The answer to the plaintiff's first point.

6. The answer to the plaintiff's second point.

7. The parts of the charge of the court enclosed in brackets.

*G. Nauman* and *S. H. Reynolds*, for plaintiff in error.—This contract was executed: Fletcher *v.* Peck, 6 Cranch 87 ; Smith on Contracts 107, 229. A defendant cannot set up his own insanity unless it were known by plaintiff: Byles on Bills 47. In an executed contract, the lunacy of defendant being unknown to the defendant, the lunatic cannot take advantage of it : Molton *v.* Camroux, 4 Exch. 19; Neill *v.* Morley, 9 Ves. 478 ; Baxter *v.* Portsmouth, 2 C. & P. 178; Cook *v.* Parker, 4 Phila. R. 267 ; Osmond *v.* Fitzroy, 3 P. Wms. 130 ; Dane *v.* Kirkwall, 8 C. & P. 679. A contract with a lunatic apparently sane cannot be rescinded unless the parties can be placed in statu quo : 1 Parsons on Contracts 385 ; La Rue *v.* Gilkyson, 4 Barr 375. The position that one *non compos mentis* cannot make a contract under any circumstances is untenable : Beals *v.* See, 10 Barr 56 ; Nace *v.* Boyer, 1 Casey 99 ; State Bank *v.* McCoy, 19 P. F. Smith 204. The test of capacity given in answer to the plaintiff's second point was too strict ; it is enough if the party knows the character of the act, and its resulting responsibility: Noel *v.* Karper, 3 P. F. Smith 97. Reports of the neighborhood as to defendant's state of mind were inadmissible : 1 Greenl. on Ev., sect. 99 ; Wright *v.* Tatham, 1 Ad. & E. 3.

*H. M. North* and *T. E. Franklin*, for defendant in error.—The test of liability for a lunatic's contract, is whether it was for necessaries ; whether the contract was executed or executory is not material: Desilver's Estate, 5 Rawle 111 ; Rogers *v.* Walker, 6 Barr 371 ; Seaver *v.* Phillips, 11 Pick. 306 ; Clark *v.* Caldwell, 6 Watts 139 ; Imhoff *v.* Witmer, 7 Casey 243 ; Inst. Lib. 3, tit. 20, sect. 8 ; Pothier on Oblig., part 1, cap. 1, sect. 1, art. 1–4 ; 3 Bac. Abr. 539 ; Yates *v.* Boen, 2 Strange 1104 ; Gore *v.* Gibson, 13 M. & W. 623 ; Pearl *v.* McDowell, 3 J. J. Marsh. (Ky.) 659 ; Bensell *v.* Chancellor, 5 Whart. 374. A contract of one so far deprived of his reason as to be unable to manage his affairs, is not

binding: McElroy's Case, 6 W. & S. 451; Commonwealth *v.* Schneider, 9 P. F. Smith 328. The finding by the commission *de lunatico inquirendo* is primâ facie evidence of lunacy: Hutchinson *v.* Sandt, 4 Rawle 234; Gangwere's Appeal, 4 Casey 466; Willis *v.* Willis, 2 Jones 159; Commonwealth *v.* McGinnis, 2 Whart. 213. The report in the neighborhood that the defendant was simple was competent: Rogers *v.* Walker, 6 Barr 371.

Mr. Justice PAXSON delivered the opinion of the court, May 24th 1875.

The law is well settled that persons who are not *sui juris*, and have no general capacity to contract debts, are nevertheless liable for their torts, and may bind themselves for necessaries. Such rule rests upon principles of sound public policy. To deny the latter branch of the proposition might in some instances deprive persons laboring under such disabilities of the means of subsistence. In La Rue *v.* Gilkyson, 4 Barr 375, it was held that the executor of a lunatic was liable for necessaries furnished to his testator while *non compos mentis*, and before the appointment of a committee. In that case the articles furnished came within the most rigid rule as applied to necessaries, such as board, washing, &c., but Chief Justice Gibson, who delivered the opinion of the court, cites approvingly Baxter *v.* Portsmouth, 2 C. & P. 178, in which it was held that the word "necessaries". (furnished to a lunatic) "is not to be restricted to articles of the first necessity, but that it includes everything proper for a person's condition; and that to hire carriages for a nobleman who, though actually insane, voted in Parliament, and went about as other men do, carries with it no mark of imposition." And it was also strongly intimated that such a man would even be liable for merchandise innocently furnished to his order under such circumstances. It is true, the latter point was not before the court, and the expression referred to is but *dictum*, but the mere *dictum* of so eminent a jurist as the late Chief Justice Gibson is entitled to respect. La Rue *v.* Gilkyson was followed by Beals *v.* See, 10 Barr 56, in which it was held that an executed contract by a merchant for the purchase of goods before the day from which the inquest found him to have been *non compos*, could not be avoided by proof of insanity at the time of the purchase, unless there had been a fraud committed on him by the vendor, or he had knowledge of his condition. There was proof in the case cited that the goods purchased were unsuited to the object for which they were purchased; that the price agreed upon far exceeded their market value, and that plaintiff had tendered them back to the defendants, who declined received receiving them, whereupon they were sold at auction, after notice. Says Gibson, C. J., "Should he have made a wild and unthrifty purchase from a stranger unapprized of his

[Lancaster County National Bank v. Moore.]

infirmity, who is to bear the loss incurred by one of the parties to it ? Not the vendor, who did nothing that any other man would not have done. As an insane man is civilly liable for his torts, he is liable to bear the consequences of his infirmity as he is liable to bear his misfortunes, on the principle that when a loss must be borne by one of two innocent persons it shall be borne by him who occasioned it. A merchant, like any other man, may be mad without showing it, and when such a man goes into the market, makes strange purchases and anticipates extravagant profits, what are those who deal with him to think ? To treat him as a madman would exclude every speculator from the transactions of commerce." It will be observed in this case that the goods were purchased two days prior to the day from which the inquest found the purchaser insane, and the transaction was not, therefore, covered by the finding. But the court do not rest their decision upon this ground, but treat it as the purchase of an insane man—insane at the time of the purchase. Such was evidently the view taken of the case in Nace v. Boyer, 6 Casey 99, in which the late Chief Justice Woodward says : " In Beals v. See, 10 Barr 56, this court held that an executed contract by a merchant for the purchase of goods could not be avoided by proof of *insanity at the time of the purchase*, unless a fraud was committed on him by the vendor, or he had knowledge of his condition." The principles decided in La Rue v. Gilkyson and Beals v. See, are recognised in State Bank v. McCoy, 19 P. F. Smith 204.

We will apply these principles to the facts of this case. George H. Moore, the defendant and alleged lunatic, resided in Lancaster county, about six miles from Lancaster city, where the plaintiff's corporation is located. He was a man of some property, was about fifty-four years of age, and to some extent, at least, had managed his own pecuniary affairs. There was not a scintilla of proof that the bank had any knowledge of his mental imbecility. On December 30th 1871, he called at plaintiff's bank, in company with B. M. Stauffer, a resident of Mount Joy, Lancaster county, for the purpose of obtaining a discount, when two notes were drawn up, one for $225 and the other for $775, signed by the said George H. Moore, to the order of Stauffer, and by him endorsed. The two notes were both discounted, and the money placed to the credit of Moore and checked out by him. There is no allegation that the money thus obtained was used improvidently ; in fact, the evidence tends to show that it was applied to the payment of his debts. Nor was there anything in his manner or conversation to put the officers of the bank on their guard as to his mental condition. On June 5th 1872, a petition *de lunatico inquirendo* was presented against George H. Moore, and after the usual proceedings, an inquisition was returned on August 10th 1872, finding that the said Moore was a lunatic, and had been so for about

three years last past, and had no lucid intervals. This inquisition was traversed on October 25th 1872, by John M. Hershey, a creditor. Said traverse was pending at time of the trial in the court below.

In Beals *v.* See, as before observed, the day when the goods were sold was not covered by finding of the inquest. Here the inquisition shows Moore to have been a lunatic at the time the note was made and discounted by the bank. The record of the proceedings in lunacy was admitted in evidence at the trial in the court below, and was undoubtedly primâ facie evidence of Moore's insanity. But we are unable to see how this affects the case. Beals *v.* See was decided upon the express ground that the merchant was liable, notwithstanding his insanity, upon an executed parol contract, in the absence of fraud in the transaction, and of knowledge on the part of the vendor of his insanity. The most that the inquisition amounted to, was to establish a primâ facie case of insanity when the contract was made. But the broad principle decided in Beals *v.* See was that the insanity, when established was not, under the circumstances, a defence.

The soundness of this rule is too apparent to need any extended vindication. Insanity is one of the most mysterious diseases to which humanity is subject. It assumes such varied forms and produces such opposite effects as frequently to baffle the ripest professional skill and the keenest observation. In some instances it affects the mind only in its relation to or connection with a particular subject, leaving it sound and rational upon all other subjects. Many insane persons drive as thrifty a bargain as the shrewdest business man, without betraying in manner or conversation the faintest trace of mental derangement. It would be an unreasonable and unjust rule that such persons should be allowed to obtain the property of innocent parties, and retain both the property and its price. Here the bank in good faith loaned the defendant the money on his note; the contract was executed so far as the consideration is concerned, and it would be alike derogatory to sound law and good morals that he should be allowed to retain it to swell the corpus of his estate.

It will be seen that the fact that the bank had no notice of the defendant's insanity is an important element in the case. The proceedings in lunacy were not commenced until after the note was discounted, and the plaintiffs were not even affected with constructive notice. We limit our decision in this case to its own facts, and do not decide the case of a contract made during proceedings in lunacy or after inquisition found. We leave the effect of *lis pendens* in such a case until the point is raised. Nor does this decision apply to conveyances of land or other instruments under seal.

From what has been said it will be seen that the learned judge

erred in his answer to the plaintiff's first point. Said point should have been affirmed in the terms in which it was presented.

There was also error in that portion of his charge referred to in the seventh assignment of error. The jury should have been instructed that if there was no fraud in the transaction, and the bank had no notice of defendant's insanity, the verdict should be for the plaintiffs.

There was also error in the admission of the evidence referred to in the third assignment. It is true its admission would seem to be sustained by the dictum in Rogers v. Walker, 6 Barr 375. But the point did not arise in that case, and the remark referred to was evidently used by way of illustration. We are unable to see how the neighborhood reports of Moore's insanity could possibly have been legitimate evidence in this case. If offered to affect the bank with notice of his insanity, it was not competent, for the reason that the reports were not brought home to the bank. If offered to prove the distinct fact of Moore's insanity it was clearly inadmissible. It was at best mere hearsay, and no amount of such evidence could legally establish such fact.

Judgment reversed and a *venire facias de novo* awarded.