# First National Bank of Birmingham *v.* Fidelity Title & Trust Company, Administrator, Appellant.

*Negotiable instruments—Promissory notes—Defenses—Insanity of endorser—Court and jury.*

1. The endorsement of a promissory note by an insane person renders his estate liable therefor to the extent of the benefits received by him, and it is not material whether the endorsements were made for his individual indebtedness or as an accommodation.

2. A depositor in a national bank gave a member of a brokerage firm, another member of which was the president of the bank, a general power of attorney for the transaction of his business.

Thereafter he made promissory notes to his own order to the amount of $25,000.00 which he also endorsed which were presented for discount to the bank by the president and the proceeds were placed to the credit of the endorser. Subsequently the attorney in fact for the endorser checked out the funds and loaned them to the brokerage firm. In an action on the notes by the bank against the estate of the endorser, the defense was that he was mentally deficient at the time when he endorsed the notes and that the knowledge of the president of the bank as to the intended use of the funds was imputable to the bank and barred its recovery. The lower court submitted the case to the jury, which found a verdict for plaintiff, upon which judgment was entered. *Held,* (1) that the knowledge of the president was not imputable to the bank, (2) that if the defendant's decedent was sane when he endorsed the notes, defendant was liable thereon, though the notes were given for the accommodation of the brokerage firm, and if he was insane at the time when he executed the notes, defendant was liable in view of the uncontradicted evidence that the entire proceeds of the notes were credited to his account.

Argued Oct. 13, 1915. Appeal, No. 106, Oct. T., 1915, by defendant, from judgment of C. P. Allegheny Co., Oct. T., 1912, No. 769, on verdict for plaintiff, in case of First National Bank of Birmingham, a Corporation Under the Laws of the United States, v. Fidelity Title & Trust Company, Administrator of Samuel B. Walton, Deceased. Before BROWN, C. J., MESTREZAT, POTTER, STEWART and FRAZER, JJ. Affirmed.

Assumpsit on two promissory notes. Before CO-HEN, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $27,613.02 and judgment thereon. Defendant appealed.

*Errors assigned* were instructions to the jury and the judgment of the court.

*Ernest C. Irwin,* with him *Chantler & McClung* and *Watson & Freeman,* for appellant.

*George N. Monro, Jr.,* with him *George N. Monro,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, January 3, 1916:

This is a voluminous record, made so by the irrelevant matters which were injected into the case on the trial in the court below. The questions presented for consideration by the jury and by the learned trial court were few, and a brief statement of the material facts will disclose that there is but one question for our consideration and it was properly answered by the jury as well as by the learned judge in his opinion refusing a new trial.

Samuel B. Walton, the defendant's intestate, like his father, had been for many years a stockholder and depositor in the plaintiff bank. In March, 1894, Walton executed and delivered to James W. Scully, a member of the firm of Scully, Painter and Beech, a power of attorney authorizing him to perform any act, matter or thing necessary or convenient to be done in the management or control of his estate; and especially to execute any check, note or any other instrument in writing whatever, and to receive and receipt for all moneys due or to become due, to convey all property, and generally to act for him as fully as he could act if personally present. Scully exercised the powers and authority conferred on him by the letter of attorney until 1912 when Walton was declared a weak-minded person and the Fidelity Title & Trust Company was appointed his guardian. Subsequent to the institution of this suit, in February, 1914, Walton died, and the Trust Company was appointed his administrator and was substituted as defendant on the record.

This is an action of assumpsit to recover the amount due on two promissory notes: one for $10,000.00, dated March 30, 1911, and the other for $15,000.00, dated May 12, 1911, signed by Walton, payable on demand to his own order, and endorsed by him. The $10,000.00 note

was discounted March 31, 1911, and the $15,000.00 note was discounted May 16, 1911, by the plaintiff bank, and the proceeds in each instance were placed in the checking account of Walton with the bank. The notes were presented for discount by Daniel Beech, a member of the firm of Scully, Painter and Beech and the president of the bank. On the days the respective notes were discounted and the proceeds placed in Walton's account, James W. Scully, Walton's attorney-in-fact, drew checks on Walton's account in the bank for the same amounts as the notes, respectively, which were duly paid. Likewise, on the days these notes were discounted and the amounts credited to Walton's account, the latter received from Scully, Painter and Beech, a brokerage firm, notes payable to himself for like sums with certain collateral attached thereto. These notes provided that the owner had the right to call for additional security should there be a decline in the market, and on failure to respond, the obligation was payable without demand or notice with power to sell the stock. It appears from the evidence that the notes and securities given Walton by Scully, Painter and Beech were deposited by Scully in the firm's safe deposit box in a sealed envelope marked "Property of Samuel B Walton" where other securities were kept for Walton by Scully.

The defense interposed on the trial of the cause was that Walton was mentally deficient or insane at the time he executed the notes, and that he drew and endorsed them for the accommodation of Scully, Painter and Beech. Under this defense, the testimony took a wide range and the result was the voluminous record we have before us. The defendant contended that no consideration passed to Walton for the notes, that the giving of the notes by Walton to the bank, and notes of the same date by Scully, Painter and Beech to Walton were all parts of the same transaction and was intended to and did make Walton simply an accommodation endorser for that firm, and that the bank, through its president,

had knowledge of the situation and was, therefore, affected by it.

The learned court below submitted to the jury to determine whether Walton was sane at the time he executed the notes, and whether he was an accommodation endorser on the notes in suit for Scully, Painter and Beech; and instructed them that if Walton was sane when he signed the notes they should find for the plaintiff, that if he was insane at that time there could be no recovery on the notes except to the extent that he or his estate was benefited by the transaction, by virtue of any consideration, or the value of any security that passed to him or his estate by reason of the two endorsements at the time he executed the papers. The court charged, as requested by the defendant, that if Walton was mentally incompetent when he signed the notes in suit the plaintiff could "recover only so far as and to the extent that Samuel B. Walton or his estate, received consideration, directly or indirectly, for the signing of said notes; and it is not necessary that the plaintiff be shown to have had knowledge of his mental incompetency at the time of said transactions." Throughout the charge, the court time and again told the jury that if Walton was insane, if the notes sued on were solely for the accommodation of Scully, Painter and Beech, and if neither Walton nor his estate received any benefit therefrom, then the verdict should be for the defendant; and that the plaintiff could only recover so far as and to the extent that Walton or his estate received consideration at the time he executed the notes.

The verdict was for the full amount of the claim which would indicate that the jury found that Walton was sane at the time he executed and delivered the notes to the bank; or if insane, that he received full consideration for the notes, as they were distinctly told that if he was deficient in mental capacity there could be no recovery on the notes beyond the amount that Walton actually received as a consideration for giving them.

There was some evidence tending to show that several smaller sums might have been received by Walton as a consideration for the notes. It is clear, however, that on the record presented to us whether Walton was sane or insane the plaintiff bank had the right to recover the full amount of the notes sued on. If he was sane at the time he gave the notes, whether he received a consideration or was simply an accommodation endorser, he was liable to the plaintiff on the notes. If he was insane, he was only liable to the extent of the benefits received by him whether they were given for his own individual indebtedness or were endorsed as an accommodation for Scully, Painter and Beech; Lancaster County National Bank v. Moore, 78 Pa. 407; Wirebach's Executor v. First National Bank of Easton, 97 Pa. 543. Under the evidence, he was not, in a legal sense, an accommodation endorser. There is no dispute as to the fact that he executed and endorsed the notes, that they were discounted by the bank, the proceeds placed to his credit in his checking account, and that the money was withdrawn from the bank by checks signed by him or his duly authorized agent. As said in the opinion of the learned trial judge in refusing the motion for a new trial, there was no fraud on the part of Scully, Painter and Beech or of the plaintiff bank "established, urged or proven at the trial or set forth in any of the points submitted or in the reasons alleged for a new trial by the defendant." The money was not only deposited to the credit of Walton in the bank, but it was checked out by him or his agent, and hence there was full consideration passing to him from the bank when he gave the notes in suit. The proceeds were deposited in Walton's checking account, and it was withdrawn on a check in the usual course of business. When the notes were executed and delivered to the bank a credit was given Walton for the proceeds. The evidence does not show that the bank had any knowledge of Walton's purpose in procuring the money or what he intended to do with

it. In fact, it was none of their concern. The bank did not know that Scully, Painter and Beech intended to or had given their notes to Walton, or that the money was procured by Walton for the purpose of loaning it to him. The bank, so far as the evidence disclosed, was ignorant of the transactions between Walton and Scully, Painter and Beech. It is true, that the president of the bank, who was also a member of the firm, presented the notes in suit for discount, and that he had knowledge that the proceeds of the note were to be used by the firm, but his knowledge cannot be imputed to the bank: Gunster v. Scranton Illuminating Heat & Power Co., 181 Pa. 327; United Security Life Ins. & Trust Co. v. Central Nat. Bk. of Philadelphia, 185 Pa. 586; Dominion Trust Co. v. Hildner, 243 Pa. 253. There is no evidence in the case that would warrant the conclusion that, as between Walton and the bank, the notes sued on were for the accommodation of Scully, Painter and Beech. Their names do not appear on the notes either as makers or endorsers. Scully, Painter and Beech had nothing whatever to do with the notes in suit. They were simply the obligations of Walton given to secure the payment of the money loaned by the bank to him. That transaction was entirely between them, and the firm had no connection whatever with it. The money was subject to Walton's check, and he or his duly authorized agent withdrew it on a properly drawn check. If the agent misappropriated the money by paying it to his firm, it cannot affect the bank or its right to recover in this action: Morris v. Great Northern Railway Co., 67 Minn. 74, 78. Walton's estate must, in that event, look to his agent for redress.

In the view we take of the case, the evidence failed to disclose any defense to the action, and the learned trial judge should have directed a verdict for the plaintiff.

The judgment is affirmed.