The Pennsylvania Company for Banking & Trusts *v.* Philadelphia Title Insurance Company, Appellant.

Argued November 13, 1952. Before STERN, C. J., STEARNE, JONES and CHIDSEY, JJ.

*Herman H. Greenberg,* with him *Mortimer N. Eastburn,* for appellant.

*Reuben Miller,* with him *I. Edward Master,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, January 5, 1953:

This is a bill in equity in which plaintiff, the guardian of Nellie Vaster, a weak-minded person, seeks to have a mortgage which was executed by its ward declared null and void. In 1941 plaintiff had been appointed by the Court of Common Pleas No. 6 of Philadelphia County as guardian of the Estate of Nellie Vaster, the assets of which estate included real estate, a parcel of which was the premises at 4600 Chester Avenue, Philadelphia. In the answer defendant prays, *inter alia,* that if the mortgage is invalid, defendant should be given an equitable lien for the amount of the mortgage.

On May 19, 1950 the ward executed a mortgage on the Chester Avenue property in the amount of $6,500 to the Second Federal Savings and Loan Association. The title was insured by defendant. At settlement delinquent taxes and water rents totaling $895.37 were paid, and after an adjustment for other settlement costs, plaintiff's ward received $5,349.38. The check in this amount was deposited by the ward in the Real Estate Trust Company of Philadelphia.

The ward informed plaintiff of the settlement on June 23, 1950, but did not state what property was involved or whether there had been a sale or a mortgage. Plaintiff then checked the records in the office of the recorder of deeds and discovered the $6,500 mortgage on the premises at 4600 Chester Avenue. On June 26, 1950 plaintiff notified the mortgagee and defendant that these premises were part of the estate for

which it had been appointed guardian. Defendant then, because of the cloud on the title, paid the mortgagee and took an assignment of the mortgage.

On July 6, 1950 plaintiff learned that its ward was operating a grocery store. A meeting was then held and attended by counsel for the ward, counsel for the plaintiff, trust officers of the plaintiff, and counsel for the defendant. The possibility of having the ward declared competent was discussed and all parties agreed that nothing should be done until that matter had been determined. After receiving notice from the ward's counsel early in August that he no longer represented her, plaintiff on petition to the appointing court, was granted leave to take possession of the assets of the grocery store without such action being considered a ratification of the mortgage. When the plaintiff attempted to take possession of these assets, it found that the store had been vacated.

On October 20, 1950 plaintiff received from the Real Estate Trust Company the sum of $1,039.34 which represented the amount of the ward's bank account after the Trust Company had deducted the balance due on a $420 loan it had made to the ward prior to the execution of the mortgage. An additional $30 (a subsequent payment on the loan by the ward) was later recovered from the Trust Company.

The decree of the court below ordered defendant to have the mortgage satisfied of record upon payment to it by the plaintiff of the sum of $1,964.71. This sum represented the balance of $1,069.34 recovered from the Trust Company, and the benefit received by the estate in the amount of $895.37 by the payment of delinquent taxes and water rent at the time of settlement. From this final decree defendant appealed.

Appellant contends: (1) that the incapacity of appellee's ward is not sufficient in itself to void the mort-

gage; (2) if the mortgage is held to be void, appellee has been unjustly enriched and should make restitution to the appellant; (3) mental incapacity is no defense to an executed contract.

In support of its first contention appellant relies upon *General Casmir Pulaski Building and Loan Association v. Provident Trust Company of Philadelphia et al.*, 338 Pa. 198, 12 A. 2d 336, and *Youngwood Building and Loan Association v. Henry et al.*, 137 Pa. Superior Ct. 124, 8 A. 2d 427. In the *Pulaski* case, a husband and wife executed a mortgage. After a period of years the mortgage became in default, and a writ of execution was issued. It was then disclosed for the first time that the husband-mortgagor had been declared to be a weak-minded person and a guardian appointed for him more than five years prior to the execution of the mortgage. This Court held that the mortgagee was entitled to an equitable lien on the real estate to the extent of the unpaid balance on the mortgage. In that case the Court construed Section 5 of the Act of May 28, 1907, P. L. 292, 50 PS §945, which provides that upon entry of a decree that a person is weak-minded, that person shall be incapable of making any contract or instrument in writing, ". . . and the entry of such decree shall be notice of such incapacity, . . .". After quoting the Act of 1907, supra, at length, the Court stated (at p. 200) : ". . . We are of opinion that the entry of such a decree under the circumstances here appearing should not be held to be notice to the full extent that notice is implied from some other records. Such notice is usually implied from the duty to examine the records. Proper title searching where conveyance is about to be made does not require the examination of the prothonotary's records for judgment against the grantee, because judgments against him would not bind after acquired real

estate: . . .". It is upon this language that appellant relies. However, upon analysis of the *Pulaski* case, it is apparent that the real basis of the decision is not enforcement of the mortgage, but rather restitution because of unjust enrichment.[1] The proceeds of the mortgage were used in the purchase of a house, which was an asset of the estate at the time the bill was filed. There had been no dissipation of funds such as is involved in the present case. It is interesting to note that the Act of 1907, supra, was repealed by Section 801 of the Incompetents' Estates Act of 1951, P. L. 612, after the acts herein occurred. A practical solution is reached, at least for those counties other than the one in which the decree of incompetency was entered, by the provisions of Section 511 of the Incompetents' Estates Act, supra, 50 PS §1861, which provides: "An incompetent shall be incapable of making any contract or gift or any instrument in writing after

---

[1] In the *Pulaski* case it was said: ". . . Notice of incapacity must be brought closer home before the circumstance of such a record deprives one dealing with a weak-minded person of *any* remedy to prevent the weak-minded one from *holding money* or property which the other has turned over to him in complete ignorance of the decree or his weak-minded condition. . . 'It would be an unreasonable and unjust rule that such persons should be allowed to obtain the property of innocent parties, and retain both the property and its price. . .' . . . 'A person who has been unjustly enriched at the expense of another is required to make restitution to the other': Restatement, Restitution, Sec. 1. . . . 'Incapacity to enter into a contract . . . is not in itself a defense in an action for restitution': Restatement, Restitution, Sec. 139. 'The reasons which cause incapacity to make contracts . . . do not apply to actions for restitution which are based upon unjust enrichment. It is fair that married women, insane persons and infants, even if they are not required to perform their promises . . . should be required to return benefits which they have received, at least if they are still in possession of the subject matter or its proceeds': . . .". (Emphasis supplied).

he is adjudged incompetent and before he is adjudged to have regained his competency. This section shall not impair the interest in real estate acquired by a bona fide grantee of, or bona fide holder of a lien on, real estate, in a county other than that in which the decree establishing the incompetency is entered, unless the decree or a duplicate original or certified copy thereof is recorded in the office of the recorder of deeds in the county in which the real estate lies before the recording or entering of the instrument or lien under which the grantee or lienholder claims.".

The *Pulaski* case, does not support appellant's first contention, nor does the *Youngwood* case, supra, since in that case there was no adjudication of incompetence and incompetence was not proved at the trial.

Appellant's second and third contentions are very similar and will be considered together. It is true that mental incapacity is no defense to an executed contract *to the extent that the proceeds of the contract have enriched the estate of the incompetent.* The other party to the transaction is entitled to restitution in that amount. In all of the cases cited by the appellant in support of its contention, including *Lancaster County National Bank v. Moore* 78 Pa. 407; *First National Bank of Birmingham v. Fidelity Title & Trust Company, Administrator,* 251 Pa. 529, 97 A. 75; *Kneedler's Appeal,* 92 Pa. 428, and the *Pulaski* case, discussed supra, there is no dissipation of funds and recovery was properly allowed to the full extent that the incompetent's estate was benefited, which in those cases was the full amount of the contractual obligation.

The $1,039.34 which appellee received from the Real Estate Trust Company was the balance remaining in the ward's account after that bank had deducted $337.83, the amount due on the loan made by the ward prior to the execution of the mortgage. Appellee made

no objection to this deduction. The $1,039.34 plus the amount deducted for the loan represented salvagable proceeds of the mortgage transaction, to which appellant was entitled. In making the loan the Real Estate Trust Company was on notice of the incompetence of the ward to the same extent and for the same reason as was appellant under the notice provision of the Act of 1907, supra, and in order to establish its right to the balance due thereon, it must show that there was a benefit in that amount to the estate of the incompetent. If some of the proceeds of the mortgage transaction in the Trust Company's hands are diverted to pay the balance due on the loan, the Trust Company would be given protection (to which it has not proved it was entitled) at the expense of appellant. This is manifestly unjust. The Trust Company is not a party to this proceeding and its right to the money it deducted from the ward's account before transmitting the balance to appellant is not here determined. However, whether or not the Trust Company had a right to recover the balance due on the loan out of the general funds of the incompetent's estate, appellant is entitled to restitution of the remaining proceeds of the mortgage transaction, that is, the amount that remained on deposit in the Trust Company before the $337.83 was deducted to satisfy an unrelated obligation. The respective rights of appellee and the Trust Company must be determined in another proceeding. In the instant case we only decide that as between appellant and appellee, appellant is entitled to this money.

In order to have the mortgage marked satisfied, appellee must pay the sum of $2,302.54 to appellant. As thus modified, the decree of the court below is affirmed. Costs to be paid by appellee.