**UNITED STATES of America**

v.

**George Frederick KOENIG, Harry Uhl, Thomas E. Monaghan, David L. Johnson, Apex Welding Service, a partnership composed of the above-named individuals, Pennsylvania Company for Banking & Trusts and Josephine Monaghan Woodhead, Guardians for Thomas E. Monaghan.**

No. 7432.

United States District Court
E. D. Pennsylvania.

Sept. 13, 1956.

W. Wilson White, U. S. Atty., and Eugene J. Bradley, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Robert C. Duffy, Philadelphia, Pa., for defendant Monaghan.

VAN DUSEN, District Judge.

This case comes before the court on the motion for summary judgment of Thomas E. Monaghan and his guardians, defendants.[1] The plaintiff claims damages under the False Claims Act, 31 U.S.C.A. § 231 et seq., resulting from a conspiracy to defraud the United States through submission by Thomas E. Monaghan (and the other individual defendants, who were welding subcontractors) of bills and invoices to a government ship repair contractor (who was being paid, inter alia, a certain sum for each hour of direct labor), which bills and invoices charged for more hours than were actually worked by defendants' employees and contained fictitious and fraudulent claims. The complaint also contains a Second Count, under 41 U.S.C.A. § 51, claiming $40,000, being an amount it is alleged defendants paid the government ship repair prime contractor as compensation (popularly called "kickbacks") for letting said subcontracts. All the illegal activities described in the complaint took place between January 1, 1943, and January 1, 1945.

The defendant contends that Thomas E. Monaghan was legally incompetent to enter into any conspiracy or to do any of the acts alleged in the complaint because the Common Pleas Court of the First Judicial District of Pennsylvania had entered an order on September 14, 1926,[2] decreeing that "Thomas E. Monaghan is not able owing to weakness of mind to take care of his property" and appointing Josephine E. Monaghan and a trust company guardians of his property.[3]

The Pennsylvania Acts of June 25, 1895, P.L. 300, June 19, 1901, P.L. 574, and May 28, 1907, P.L. 292, as amended prior to the repeal of the last mentioned Act by Section 801 of the Incompetents' Estates Act of 1951, 50

---

[1] By stipulation dated June 1, 1956, and filed June 15, 1956, the guardians of Thomas E. Monaghan joined in the motion for summary judgment filed by the attorney for Thomas E. Monaghan on April 11, 1956.

[2] No. 16,202, June Term 1926, Court of Common Pleas No. 5. This order was attached to a petition filed "under the Act of May 28, 1907, P.L. 292, as amended."

[3] Defendant emphasizes that Section 5 of the Act of May 28, 1907, P.L. 292, provided that upon the entry of a decree such as that of September 14, 1926, the person declared to be weak-minded " * * shall be wholly incapable of making any contract or gift whatever, or any instrument in writing, and the entry of such decree shall be notice of such incapacity * * *." However, this is not a suit for recovery of money due under the terms of a contract or of an instrument in writing, but the money claimed is owed, if at all, as a result of statutes of the United States which are the supreme laws of the land. Furthermore, the Pennsylvania statutes do not purport to exempt a person who has been decreed to be weak-minded from compliance with the statutes of the United States of the type involved in this case. Cf. Commonwealth v. van den Berg, Q. S. Del. Co., 1941, 41 Pa.Dist. & Co.R. 39.

Also, even if the bills and invoices constitute an "instrument in writing" under this 1907 Act, the Pennsylvania appellate courts have held that this statutory language only creates a rebuttable presumption of the invalidity of the contract or instrument in writing. In Re Hoffman's Estate, 1904, 209 Pa. 357, at page 360, 58 A. 665, at page 666, the court said:

"Whatever the difference in capacity required between a contract and a will, the latter is an 'instrument in writing,' and prima facie within the prohibition of the statute, and, if made during the existence of a decree, the presumption against its validity can only be overcome by satisfactory evidence of restoration of capacity."

P.S. § 2041, established a legal status or condition intermediate between normal mental capacity and insanity or lunacy. This legal status was one of weak or enfeebled mind. See In re Hoffman's Estate, 1904, 209 Pa. 357, 58 A. 665; In re Colt's Case, 1906, 215 Pa. 333, 64 A. 597; cf. Yacabonis v. Gilvickas, 1954, 376 Pa. 247, 251, 101 A.2d 690. It has been consistently held by the Pennsylvania appellate courts that a decree of weak-mindedness only raises a presumption of incompetency which may be rebutted. See In re Hoffman's Estate, supra; Denner v. Beyer, 1945, 352 Pa. 386, 42 A.2d 747.[4] In Re Hoffman's Estate, supra, the court said, 209 Pa. at page 360, 58 A. at page 666, "The contention of appellant, therefore, that the death of Hoffman without any revocation by the court of the decree of incapacity closed all inquiry on that subject, is too broad, and cannot be sustained. * * * the presumption against its validity can only be overcome by satisfactory evidence of restoration of capacity." In Denner v. Beyer, supra, the court said, 352 Pa. at page 390, 42 A.2d at page 748:

> "If Mrs. Beyer should be decreed so mentally defective as to be incapaable of managing her own property, this would raise a presumption of her incapacity, after the date of the decree, to make a will, and this could only be overcome by evidence of restoration of mental faculties or at least of a lucid interval."

The record in this case contains evidence that Thomas E. Monaghan was employed as a teacher in the Philadelphia public school system from September 1940 to January 1945. In November 1943 and again in January 1944, he applied in writing to the appropriate Pennsylvania authorities, together with the individual defendants, to engage in the business of welding and servicing of boilers under the name of "Apex Welding Service" and "Apex Welding and Boiler Service." In July 1944 and September 1944, he took title to two separate pieces of real estate in New Jersey. In 1946 he applied in writing again to the appropriate Pennsylvania authorities to engage in business with Joseph Quinn as "Acme Pipe Contractors." This and other evidence in the record makes clear that plaintiff is entitled to an opportunity to rebut the presumption created by the 1926 decree and to show that Thomas E. Monaghan was not weak-minded during the time covered by the complaint.

Also, it should be noted that even if this defendant was weak-minded at the time of receiving the sums alleged to have been paid to him in violation of the statutes, plaintiff would be entitled to recover to the extent that Thomas E. Monaghan or his guardians may have been unjustly enriched by such sums. See Pennsylvania Company for Banking and Trusts v. Philadelphia Title Insurance Company, 1953, 372 Pa. 259, 264, 93 A. 2d 687, and cases there cited.[5]

---

4. Even a finding of lunacy (as opposed to weak-mindedness) is not conclusive under the Pennsylvania cases. In Mulholland v. Sterling M. T. Co., 1933, 309 Pa. 590, at pages 591–592, 164 A. 597, the court said:

> "So far as the validity of the contracts was concerned, the finding of the inquisition was prima facie evidence of insanity, and cast upon defendant the burden of establishing the other party's competency to contract. Noel v. Karper, 53 Pa. 97. A finding of lunacy, however, is not conclusive, and may be rebutted. Hutchinson v. Sandt, 4 Rawle [Pa.] 234, 238; Moore v. Hershey, 90 Pa. 196, 202. In ascertaining the mental condition of Mulhol-

land at the time of entering into the contracts, evidence as to other transactions made prior to or shortly after the dates in question is admissible 'as corroborative of his condition at the date(s) of the agreement(s).'"

5. Although the guardians of a weak-minded person are simply the bailiff or agent of the court, see In re Gerlach's Estate, 1937, 127 Pa.Super. 293, 300, 193 A. 467, such guardians would have to make restitution if they have received funds illegally secured by the ward and turned over to them under the principles set out by the Pennsylvania Supreme Court in the above-mentioned Pennsylvania Company case.

### Order

And Now, this 13th day of September, 1956, defendants' motion for summary judgment is denied.