## Hoffman Estate

*Edward E. Dicker*, for exceptant.
*David Wachtel* and *William Slom*, contra.

KLEIN, P. J., November 10, 1960.—An extremely narrow but important question has been raised by the exceptions which are before us for consideration.

Can the Commonwealth recover relief payments made to a person who fraudulently concealed ownership of assets when applying for the relief, from funds of such person not owned when the assistance was received but acquired subsequent thereto? The answer depends on whether the state's right to reimbursement is restricted to the remedies set forth in The Support Law of 1937, as amended. The auditing judge ruled in favor of the Commonwealth and we all agree with his conclusion.

The facts are not in dispute. Mary Hoffman, the decedent, received public assistance from December 30, 1944, to June 30, 1948, in the amount of $1,562.30. During this period she had $280.05 on deposit in West Philadelphia Federal Savings and Loan Association. In her original application for assistance, made in 1940, she concealed her ownership of this account and falsely stated that she had no savings accounts or other property of any kind. In 1944 she signed a second false statement, designated "affidavit" in which she stated that the statements made in the 1940 application "are still true and correct." When decedent died in 1958, her only asset was a legacy of $1,000 payable to her from the estate of Gustav Steipp, who died in 1957.

Section 4 of The Support Law of June 24, 1937, P. L. 2045, 62 P S §1974, provided:

"(a) The real and personal property of any indigent person shall be liable for the expenses of his support, maintenance, assistance and burial, incurred by any public body or public agency, whether owned at the time such expenses were incurred *or acquired thereafter* . . ." (Italics supplied.)

If this provision, as originally enacted, were still in force, there would be no question that the Commonwealth could enforce reimbursement from any asset owned by the recipient of public assistance, regardless of when such asset was acquired.

Recognizing that such a provision might prove to be a serious deterrent to the rehabilitation of indigent persons, the Legislature amended the section by the Act of June 9, 1939, P. L. 310, eliminating the words "acquired thereafter" and substituting therefor: ". . . if the right to ownership of such property existed or was acquired during the time such expenses were incurred . . ." This was further amended by the Act of September 26, 1951, P. L. 1455, so that the section now reads:

"(a) The real and personal property of any person shall be liable for the expenses of his support, maintenance, assistance and burial, and for the expenses of the support, maintenance, assistance and burial of the spouse and minor children of such property owner, incurred by any public body or public agency, *if such property was owned during the time such expenses were incurred, or if a right or cause of action existed during the time such expenses were incurred from which the ownership of such property resulted* . . ." (Italics supplied.)

Since the relief payments for which reinbursement is sought were made between 1944 and 1948 and the sole asset in Mary Hoffman's estate was the legacy from the estate of a person who died in 1957, it seems clear that the Commonwealth cannot enforce its claim under the foregoing section of The Support Law.

Mr. Dicker, on behalf of exceptant, contends that the Commonwealth's right to reimbursement is restricted to the provisions of The Support Law and, therefore, since the legacy in question was received many years after the relief payments were made, that

the State's claim cannot be paid therefrom. With this we do not agree. In our opinion, the limitations of section 4 apply only to cases in which the application for relief was honestly made in good faith, free from all fraud and deceit. Decedent's fraudulent conduct adds a new dimension to the present case.

When the legislature formulated the relief system and provided for its operation, it was keenly aware of the fact that one of the most serious problems confronting it was the possible perpetration of widespread fraud by ineligible applicants for relief. Unless constant vigilance was exercised and careful precaution taken to prevent misuse of the relief system, the entire program could be endangered. An examination of the Act of May 29, 1935, P. L. 254, reveals that the Legislature was keenly aware of this problem and made every effort to eliminate fraudulent practices. Section 1 of the act provides:

"That every person, applying for direct relief or work relief from any agency, authorized by law to distribute or furnish such relief out of any moneys appropriated in whole or in part by the Commonwealth or by the Federal Government, and every person now receiving such relief, shall be required to sign a statement, setting forth his or her financial status and such other facts as may be required by the State Emergency Relief Board*, in order to determine whether such person is entitled to relief, and shall also be required to sign, as a part of his or her written application, his or her own bond to the Commonwealth, without surety, containing a warrant of attorney to confess judgment in the penal sum of five hundred dollars, which bond shall be conditioned on the truth and lack of fraud and misrepresentation in any of the

---

*Abolished, and powers and duties transferred to the Department of Public Assistance. See Act of June 24, 1937, P. L. 2051, sec. 14.

statements made by such applicant in his or her written application. Every such applicant shall make affidavit that the facts set forth in such statement are true and correct. Any person employed in the distribution of unemployment relief shall have power to administer oaths for the purpose of carrying into effect the provisions of this act."

Section 2 of the act outlines a procedure to punish persons who obtain relief by means of false statements:

"Penalty. Every person giving any wilfully false information in any such statement shall be guilty of a misdemeanor, and, upon conviction thereof, shall be sentenced to pay a fine of not more than five hundred dollars or suffer imprisonment for not more than six months, or both, in the discretion of the court, and shall also be sentenced to make restitution of any moneys received by reason of any such false statement. In case such moneys are not restored, proceedings may be had on the bond herein provided for."

Thus it appears that giving false information in the application for relief was made a misdemeanor and the act provided not only for punishment of the offender, but also a procedure to recover the money illegally obtained, either by an order of restitution by the court upon conviction, or by proceedings on the bond required by the statute.

In the present case, Mary Hoffman was not prosecuted because the fraud she perpetuated was not discovered until after her death. Moreover, there is nothing in this record to indicate whether a bond was given by her as required by the act. If such a bond was given in 1944, it apparently is no longer in existence.

Do these facts prevent the Commonwealth from recovering the money fraudulently taken by Mary Hoffman? We think not. The State's right to repayment

is not dependent upon statutory permission, but rests upon the common-law doctrine which imposes "an implied duty on the part of a recipient of public assistance, or his estate, to make reimbursement": Waits' Estate, 336 Pa. 151, 156 (1939) ; Reiver's Estate, 343 Pa. 137 (1941).

If reimbursement cannot be obtained by the Commonwealth by means of procedures outlined in the several statutes dealing with the subject, it is entitled to restitution in precisely the same manner as any person deprived of property by fraudulent means.

"A person who has been unjustly enriched at the expense of another is required to make restitution to the other": Restatement of Restitution §1. "A person is not permitted to profit by his own wrong at the expense of another": Restatement of Restitution §3. This is the settled law in Pennsylvania. See Pa. Co. for Bank and Tr. v. Phila. T. Ins. Co., 372 Pa. 259 (1953) ; Binns v. First National Bank of California, Pennsylvania, 367 Pa. 359 (1951) ; Gladowski v. Felczak, 346 Pa. 660 (1943) ; General Casmir Pulaski Building and Loan Association v. Provident Trust Company of Philadelphia, 338 Pa. 198 (1940) ; Zurich General Accident and Liability Insurance Company, Ltd. v. Klein et ux., 181 Pa. Superior Ct. 48 (1956) ; Lauffer v. Vial, 153 Pa. Superior Ct. 342 (1943) ; Dworzcak v. Metropolitan Life Insurance Co., 9 D. & C. 2d 614 (1955).

We therefore concur in the auditing judge's conclusion that the Commonwealth is entitled to reimbursement of the relief payments in the sum of $280.05, fraudulently obtained by the decedent from 1944 to 1948 even though her right to the fund from which it is being paid was not acquired by her until 1957.

To summarize, we conclude:

1. That, in the absence of fraud, section 4 of The Support Law of 1937, as amended, is applicable and

768

restricts the Commonwealth in its efforts to seek reimbursement for relief payments to assets owned by the recipient or to which a right or cause of action from which the ownership of such property resulted existed when the relief payments were made;

2. That if the relief was obtained as a result of false information furnished by the recipient in his written application for relief, he is subject not only to criminal prosecution, but also to an order to make restitution and if such restitution is not made, to proceedings on the bond required by law; and

3. If reimbursement cannot be obtained by the Commonwealth by means of these procedures, it is entitled to restitution in the same manner as any person deprived of property by fraudulent means.

The exceptions are therefore dismissed and the adjudication confirmed absolutely.