# Hook's Estate.

| 207 | 203 |
| 208 | ²428 |
| 208 | ²431 |

*Will—Contract—Evidence.*

In a will contest an effort was made to establish a contract of testatrix to divide her own estate equally if the children agreed to a proposed amicable partition of their father's realty. There was evidence of a threat on her part " to cut them short " in the distribution of her own estate, if they did not agree, and one interested witness testified to a promise that she would " divide share and share alike " among them, if they would agree. This, however, was disputed. *Held,* that the evidence was insufficient to establish an express promise which would in any way amount to a binding contract.

*Will—Issue devisavit vel non—Undue influence—Evidence.*

To set aside a will on the ground of undue influence where the testator is in full possession of his faculties and his testamentary capacity admitted or established, the evidence must be clear and strong. Mere opinions or suspicions, or belief, not founded on facts testified to, will not be sufficient.

The mere fact that the proponents of a will were the favored children

of the testatrix, and that they were more attentive to her in her declining years, is not sufficient to establish undue influence in the absence of proof of acts or course of conduct which unduly influenced the testamentary act.

The fact that a son tried unsuccessfully for years to induce his mother to exclude from her household a daughter, is not evidence in favor of, but rather against undue influence; nor is the fact that at the time testatrix executed her will she executed and delivered in escrow a deed to be delivered to a favorite son after her death on payment by him to her estate of an amount alleged to be less than the value of the land, in itself evidence of undue influence.

The fact that a favorite son of testatrix largely benefited by her will, attended to her business and acted as her attorney in her lifetime, does not in the absence of evidence of impairment of testatrix's mental faculties, impose upon him the burden of proving that he exercised no undue influence on the mind of his mother.

Argued Oct. 19, 1903.   Appeal, No. 140, Oct. T., 1903, by John P. Hook et al., from decree of O. C. Greene Co., Feb. T., 1903, No. 63, dismissing appeal from Register of Wills in estate of Eliza Hook, deceased.   Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT and POTTER.   Affirmed.

Appeal from register of wills.
The opinion of the Supreme Court states the case.

*Error assigned* was decree dismissing appeal.

R. F. Downey, with him James E. Sayers and James Inghram, for appellant, cited : Miller's Est., 179 Pa. 645 ; Sharpless's Est., 134 Pa. 250 ; Robinson v. Robinson, 203 Pa. 400 ; Darlington's Est., 147 Pa. 624.

D. S. Walton, with him J. W. Ray and H. B. Axtel, for appellee, cited : Wingert's Est., 199 Pa. 427 ; Herster v. Herster, 122 Pa. 239 ; Pensyl's Est., 157 Pa. 465 ; Logan's Est., 195 Pa. 282 ; Tawney v. Long, 76 Pa. 106 ; Shreiner v. Shreiner, 178 Pa. 57 ; McMahon v. Ryan, 20 Pa. 329 ; Friend's Est., 198 Pa. 363 ; Messner v. Elliott, 184 Pa. 41.

OPINION BY MR. CHIEF JUSTICE MITCHELL, November 9, 1903 :

The charge of mental incapacity at the time of making the will was practically abandoned in the court below, and has not

been pressed here.   As found by the learned judge below the very extreme that could be claimed under the testimony in that regard would be a failing of memory on the part of the testatrix which was not to the extent that would of itself establish testamentary incapacity.   See Shreiner v. Shreiner, 178 Pa. 57.

The effort to establish a contract of the testatrix to divide her own estate equally if the children agreed to the proposed amicable partition of their father's realty, entirely failed. There was evidence of a threat on her part " to cut them short " in the distribution of her own estate if they did not agree, and one interested witness testified to a promise that she would " divide share and share alike " among them if they would agree.   But this was disputed and the weight of the evidence was so clearly against there having been an express promise which would in any way amount to a binding contract, that a verdict on that ground could not have been sustained.

This leaves the only real question in the case that of undue influence.   To set aside a will on this ground where the testator is in full possession of his faculties and his testamentary capacity admitted or established, the evidence must be clear and strong.   Mere opinions or suspicions or belief not founded on facts testified to will not be sufficient: Englert v. Englert, 198 Pa. 326.

The evidence in the present case is fully and fairly presented by the learned judge below as follows : " It is undoubtedly true that the proponents were the favorite children of the testatrix and it is likewise true they were more attentive to her in her declining years than any of her other children. . . .

" There is no law to the contrary, and it is a fact with which we come in contact almost every day that in large families parents occasionally have favorite children and there is no way in which this is usually more strikingly manifested than in the management, use and distribution of their property, and such procedure is frequently the source of extended and expensive litigation, growing out of conditions which seem to be recognized and understood during the lifetime of the parents but which, too often, are overlooked and forgotten after their decease.

" There is, we think, a pertinent instance in this case.   At

the time of the execution of the first will, the testatrix executed
and delivered in escrow to her son Thomas a deed to be de-
livered to William A. after her death for the Hook homestead,
a lot 60 by 180 feet, situate on a prominent corner in the borough
of Waynesburg, for the consideration of $7500, to be paid
after her death and which was distributed in the will in ques-
tion, and which consideration and distribution were not satis-
factory to the caveators, and this would appear to be the prime
moving cause in the institution of this contest. It is insisted
that this corner property in 1896 was worth much more than
$7,500 and a number of witnesses have testified accordingly, as
have also some testified that in their opinion it was a fair price;
taking all of which into consideration together with the fact
that the vendee in said deed was one of her favorite sons and
that the testatrix was the owner in fee of this lot and that she
could let him have it for whatsoever price she pleased or could
give it to him absolutely without price if she so desired, we do
not think this circumstance goes very far toward establishing
the claim of the caveators and would be a weak foundation on
which to rest a verdict against the validity of this will. . . .

"Another circumstance earnestly insisted on by the caveators
to establish undue influence is: when the youngest daughter,
Jennie, was married in 1886, her mother seems to have exacted
a promise from her intended husband to the effect that she
should remain at home with her as long as she lived. The
condition was accepted. The daughter married and remained
at home and she and her mother and her brother William A.
lived together as formerly until in 1892 when, in consequence
of some misunderstanding, Jennie and William A. fell out and
ceased speaking to each other and William A. endeavored to
get his mother to send Jennie and her family to themselves,
and failing he left the table of his mother and for several
years took his meals with his brother John P. who lived in the
same house, yet during this time he does not seem to have
ceased his efforts in trying to get his mother to send Jennie
away, as nearly all the other children say that at some time or
another he requested them to intercede with their mother in an
effort to get her to do so, yet with it all Jennie remained with
her mother for eight years after William A. endeavored to get
her to send her away and it does not clearly appear that when

she went in May, 1900, less than a year before her mother's death, it was because of the efforts of William A. to get her to go.

"Instead of this being evidence of undue influence and of the fact, as testified to by some of the children, that the testatrix would do anything William A. asked, we incline to the belief that it is a strong circumstance to the contrary and instead of supporting a verdict on the ground of undue influence it would tend to set such a verdict aside. It would tend to show, as claimed by the proponents, that she was a person of more than ordinary firmness and will power and it was not her disposition to allow any of her children—even her favorites— to dominate or influence her against her will.

"As to what the testatrix did or refused to do in her lifetime for any or all of her children in either assisting or refusing to assist them as per the instances referred to in the testimony, regardless of the extent or amount, we are of the opinion that while they are circumstances for consideration they can have but little weight unless shown to have been prompted by, or in some manner connected with, the acts relied upon to establish undue influence, which must be done by other evidence than merely surmise that such is a fact.

"The other matters alleged on which caveators rely to establish undue influence on the part of the proponents are largely conclusions and inferences without the necessary competent evidence to support them. We are of opinion that the claim of the caveators to the effect that William A. through a long series of years systematically endeavored to poison the mind of his mother against certain of his brothers and sisters and bring about an estrangement has not been established so as to make it anything like a controlling factor in this case.

"Nor do we think the matter of his attending to her business and acting as her attorney has been proved to have been done in such manner as to show anything more than proper and legitimate services on his part and doing what under her instructions he thought was for the best interest of her estate."

This the learned judge properly held was not sufficient to warrant the submission of the case to a jury.

It is argued that the confidential relations between testatrix and her son William A. Hook, put upon him the burden of

proof within the rule of Yardley v. Cuthbertson, 108 Pa. 395, and Darlington's Estate, 147 Pa. 624, but the facts did not in the opinion of the court below warrant the application of those cases, and in this we concur. The present belongs rather to the class of Caldwell v. Anderson, 104 Pa. 199, and Friend's Estate, 198 Pa. 363. In the latter case it was held that although the son was one of the trustees of his mother's estate under the will of her father, and his relations with her were intimate, he being consulted by her in all her business affairs and acting as her agent and confidential advisor, nevertheless there being no sufficient evidence of impairment of testatrix's mental faculties, the burden of proof of undue influence remained on the contestants. In the present case the evidence of confidential relation is not nearly so strong as it was there.

Judgment affirmed.