## Shuey et al., Exrs., *v.* Shuey et al., Appellants.

Argued October 3, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN and PATTERSON, JJ.

28

*Fred B. Trescher,* of *Kunkle, Walthour & Trescher,* for appellants.

*Charles C. Crowell,* of *Crowell & Whitehead,* for appellees, was not heard.

OPINION BY MR. JUSTICE MAXEY, October 28, 1940:

The question before us is whether or not an allegation of undue influence in making a will was sufficiently supported by proof. The court below found that it was not, and entered judgment in favor of the proponents of a will notwithstanding a jury's verdict in favor of the contestants.

Henry D. Shuey was 78 years of age when he made his will on September 4, 1931, and 83 years of age when he died. On May 13, 1932, the testator republished his last will and testament and "revoked all other wills at any time heretofore made." He had never married. The contestants of the will, who were three nephews of the decedent, alleged that another nephew, William H. Shuey "and other persons" had unduly influenced the testator to make his will. This nephew, William H. Shuey, was named as one of the two executors of the will and received a specific bequest of five thousand dollars. The Orphans' Court awarded an issue devisavit vel non, directed to the Court of Common Pleas to determine the following questions of fact: "1. Whether or not at the time of the execution of the said writing the decedent was a person of sound mind. 2. Whether or not the said writing was procured by undue influence,

duress and constraint, practiced upon the said decedent by William Henry Shuey, and others. 3. Whether or not the said writing is the Will of the said decedent." The jury returned a verdict that on September 4, 1931, Henry D. Shuey possessed testamentary capacity but that the writing of September 4, 1931, had been procured by the undue influence of a nephew, William H. Shuey, or some other persons; that Henry D. Shuey lacked testamentary capacity on May 13, 1932, the date of the republication and revocation of intervening wills, and that the same was procured by undue influence exerted by William H. Shuey and others. On these special findings, a general verdict in favor of the defendants or contestants was recorded.

The proponents of the will moved for judgment n. o. v. in their favor and this motion the court granted, saying: "The evidence as a whole is insufficient to sustain the finding of the jury that in the preparing and signing of the will dated September 4, 1931, the testator was unduly influenced by William H. Shuey or other persons, and it is our duty to set that finding aside and enter judgment on the entire record in favor of the plaintiffs." This appeal followed.

In *Phillips' Est.,* 244 Pa. 35, 43, 90 A. 457, this court said: "When a will is attacked on the ground of undue influence, it is necessary to bear in mind the meaning of the term; as a legal phrase it is used as denoting something violative of legal duty. The word 'influence' does not refer to any and every line of conduct capable of disposing in one's favor a fully and self directing mind, but to a control acquired over another which virtually destroys his free agency. In order to constitute undue influence sufficient to void a will, there must be imprisonment of the body or mind, fraud, or threats, or misrepresentations, or circumvention, or inordinate flattery, or physical or moral coercion, to such a degree as to prejudice the mind of the testator, to destroy his free agency and to operate as a present re-

straint upon him in the making of the will." In *Hook's Est.*, 207 Pa. 203, 56 A. 428, we declared: "To set aside a will on this ground [undue influence] where the testator is in full possession of his faculties and his testamentary capacity admitted or established, the evidence must be clear and strong. Mere opinions or suspicions or belief not founded on facts testified to will not be sufficient." We reiterated these principles as recently as the *Royer's Estate*, 339 Pa. 423, 12 A. 2d 923.

We agree with the court below that the burden of proof resting upon the contestants was not sustained. The attorney who wrote the will and who is referred to in the opinion of the court below as "a reputable member of the Westmoreland County Bar," testified that all of the information as to testator's property and the person to whom he desired to give it, as set out in the will, was furnished him by the testator, without aid or suggestion on the part of William H. Shuey, or any other person, with the exception that after the pencil notes were completed, William H. Shuey asked testator, "Do you not want to give your brother Simon something?" to which testator replied: "No, I have given him too damn much already." The court below in its opinion said: "That the testator knew he was making a will and also knew and remembered what its provisions were, is corroborated by the testimony of Mrs. Simon Shuey, that when he came home he told her that he had made a will and did not leave his brother Simon anything and told her with some considerable detail what the provisions of his will were. His memory appeared to be very good as to these details, and leads us to believe that he knew his property and knew not only to whom he wanted to give it, but to whom he did not want to give it, and, while we do not know his reasons in detail for cutting out his brother Simon, this to us is evidence, not of a weak mind but of a strong mind and will. . . . At the close of the testimony, we were of the opinion that there was no evidence going to estab-

lish a confidential relation between William H. Shuey and the testator, and further that there was no evidence of undue influence exercised by William H. Shuey or any other person, and so stated to counsel, and also that we would submit to the jury only the question of testamentary capacity. . . . Knowing that William H. Shuey was bequeathed $5,000.00 and thinking that there may have been testimony that we had overlooked or failed to recollect, we submitted the question of undue influence on the part of William H. Shuey or any other person . . . to the jury." The court below said further: "We have carefully considered the opinion in the above case [*Wolfe's Est.*, 284 Pa. 169, 130 A. 501], together with *Miller v. Oestrich*, 157 Pa. 264, 27 A. 742; *Herr's Est.*, 251 Pa. 223, 96 A. 464; *Cookson's Est.*, 325 Pa. 81, 188 A. 904, and conclude the rule of law to be, (1) That a person by whom a will is written and who receives a substantial legacy or bequest, or (2) a person under whose advice a will is written and who receives a substantial bequest or legacy, or one in a confidential relation who receives a large legacy or bequest, has the burden of proving testamentary capacity and showing that the testator acted with full knowledge of the value of his estate and that the transaction was fair and conscionable." The court below then said: "We have read the voluminous testimony and conclude that William H. Shuey did not stand in a confidential relation to the testator. That while a confidential relation of client and attorney existed between Edgar R. Shirey, who wrote the will, and the testator, he received no legacy or bequest, but was named executor, and as William H. Shuey did not write or advise the writing of the will, that the burden of proving testamentary capacity and full knowledge in the testator of his property and the fairness of the proceedings did not shift to them, or either of them. . . . But admitting for the purpose of argument that the burden of showing testamentary capacity and knowledge of property in the testator, did

shift to the plaintiffs', does not the uncontradicted testimony of Edgar R. Shirey, the scrivener, William H. Shuey, a legatee, and George H. Martin and Miss Nata A. Loor, subscribing witnesses to the will, meet this burden and establish testamentary capacity and lack of undue influence." We agree with the court below that "the evidence as a whole is insufficient to sustain the finding of the jury that in the preparing and signing of the will dated September 4, 1931, the testator was unduly influenced by William H. Shuey or other persons."

In *Noble's Est.*, 338 Pa. 490, 492, 13 A. 2d 422, this court quoted with approval the following from *Dible's Est.*, 316 Pa. 553, 554, 175 A. 538: "We have repeatedly held that in reviewing a chancellor's refusal of an issue devisavit vel non the question for the appellate court to decide is not whether it would have reached the same result had it been acting as chancellor, but rather whether a judicial mind, on due consideration of the evidence as a whole, could reasonably have reached the conclusion of the chancellor [citing cases]."

While in the case at bar the issue was granted, the court upon due consideration of the evidence as a whole reached the conclusion that the verdict of the jury should have been in favor of the proponents of the will. Applying the test just cited from *Dible's Estate,* it is clear that "a judicial mind, on due consideration of the evidence as a whole, could reasonably have reached the conclusion" the court below reached.

The judgment is affirmed.