## McClaney, Appellant, *v.* Scott.

Argued November 10, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, ERVIN, and WATKINS, JJ. (WOODSIDE, J., absent).

*Allen N. Brunwasser,* for appellant.

*Hyman Borovetz,* for appellee.

OPINION BY WATKINS, J., December 9, 1958:

This is an appeal from the decree of the Court of Common Pleas of Allegheny County dismissing a complaint brought by Eula McClaney, the appellant, to quiet title on property purchased from Andrew J. Scott, the named appellee, for whose estate the Potter Bank and Trust Company, now Fidelity Trust Company, was named guardian by the Orphans' Court of Allegheny County under the Incompetent's Act of 1955, as amended.

The property was purchased on March 1, 1955, for the sum of Four Thousand ($4000) Dollars and the appellant gave a purchase money mortgage to the appellee on that date in the amount of Two Thousand Three Hundred forty-three Dollars and fifty ($2343.50) Cents, payable with interest at six per cent. Scott was adjudged an incompetent and the bank named guardian of his estate on February 29, 1957. In early April of 1957, he was released from the Mayview State Hospital where he had been a patient for six months.

The guardian bank shortly after its appointment made demand of the appellant for payment of the mortgage and on April 24, 1957, this complaint was brought by the appellant to quiet title in that, the purchase money mortgage had been paid in full.

At the hearing both the appellant and Scott testified that the mortgage was paid in full. The appellant offered documentary evidence in the form of re-

ceipts signed by Scott, who admitted their validity, to show payments on account of the mortgage in the amount of One Thousand one hundred twenty-five ($1125) Dollars. These payments were dated from April 7, 1955 until November 15, 1956, all prior to the action adjudging incompetency. The appellant further offered documentary proof in the form of agreements for the rental of an apartment and a garage to Scott. These agreements were acknowledged by Scott, who corroborated the appellant, by testifying that he occupied the apartment and used the garage under the written agreements. Both the apartment and the garage are a part of the mortgaged property. Both parties testified that he lived in this apartment from the time of the sale to date and that during his stay in the hospital his furniture and personal property remained in the property. The agreements provided for rental of the apartment at $50 per month; and for the garage, a rental of $7 a month.

They both testified that the rental for the apartment was $50 a month from March 6, 1955, until June 1, 1957, at which time it was reduced to $40 per month. The garage was used by Scott from March 1, 1955, to January 1, 1957, at the rental of $7 per month or a total of $154. The court found that the uncontradicted testimony of the witnesses, supported by the documentary proof, disclosed payment and credits in the sum of Two Thousand six hundred twenty-nine ($2629) Dollars so that if the testimony is believed the mortgage is paid in full.

The guardian presented no testimony and there was no evidence that the rentals set forth in the agreement were not reasonable and fair. Both parties testified that on Scott's release from the hospital he returned to the apartment but then went to live with the appellant for about three weeks in her own home and

thereafter returned to the apartment where he is living today.

Although the court below admits all the above evidence and states that there is no contradictory testimony, he believes none of it and states, "it may be that this court is unduly suspicious but we are convinced that the mortgage had not been paid in full." The complaint was dismissed. Exceptions filed by the appellant were dismissed by the court en banc and this appeal followed.

We cannot agree with the court below and feel that the dismissal of this complaint is in violation of equitable principles of restitution and unjust enrichment. "Fraud is not to be established by imagination or suspicion; to have the effect to set aside a contract in writing, it must rest on probative facts." *Stroh v. Holmes*, 83 Pa. Superior Ct. 129, 133 (1924). See also *Haze v. Home Friendly Ins. Co. of Md.*, 130 Pa. Superior Ct. 366, 197 A. 632 (1938). This Court said in the *Stroh* case, at page 132, "The receipt could not be lightly disregarded. While a receipt is not conclusive evidence and is open to explanation, in the absence of such explanation it is always prima facie evidence of the payment admitted. It is the written agreement of the maker that he received from the payer the amount therein set forth, and as such agreement it stands in the same class as other instruments in writing which express the agreement of contracting parties. Unless fraud, accident or mistake or other weighty reason is made to appear, the law gives to such a document the effect to which its purport entitles it, and the evidence to avoid its effect must be clear and direct." See also: *Forbes Church v. Salvation Army*, 381 Pa. 249, 113 A. 2d 311 (1955), which held, "In the absence of fraud, accident or mistake, where the parties have deliberately put their engage-

ments in writing, the writing is not only the best but the only evidence of their agreement."

So that even without the testimony of the appellee incompetent, the receipts and rental agreements, together with the testimony of the appellant, cannot be ignored by the court below. The only possible reason to avoid the documentary evidence was the fact that Scott had been adjudged a weak-minded person and might have been taken advantage of by the appellant. The answer to this is that there is no such evidence presented in this case. The receipts for payment were all made prior to the incompetency finding. And this was also true in the case of the rental agreements, except for the period from February 29, 1957, to the date of the hearing.

The court below was bound to credit these payments to the mortgage. Certainly just because a party has been adjudged incompetent is no reason to rule that payments made to him should be cancelled to the unjust enrichment of his estate. "Restitution, although not used as frequently as other forms of action, and still somewhat new in the Courts, has grown in usage until the America Law Institute in 1936 deemed it of sufficient importance to publish a volume of 1003 pages relating to 'Restitution', to which has been added a supplement of 207 pages.

"The principle of restitution has been frequently used in our Court. In Pulaski v. Provident Trust Co., 338 Pa. 198, the Supreme Court upheld a restitution action based upon Sections 1 and 139, of the Restatement, Restitution. Section 1 of 'Restitution' provides: 'A person who has been unjustly enriched at the expense of another is required to make restitution to the other.' Section 139 under 'Restitution' provides that, 'Incapacity to enter into a contract . . . is not in itself a defense in an action for restitution.'" *Binns v.*

*First National Bank,* 367 Pa. 359, 372, 80 A. 2d 768 (1951). It would be an unreasonable and unjust rule that such persons should be allowed to obtain the property of innocent parties and retain both the property and the price. It is fair that married women, insane persons and infants, although not required to perform their promises should be required to return the benefits they have received.

The Restatement has this to say as to proceedings to secure restitution. Section 4 (f) provides that the party is entitled to "a judgment at law or a decree in equity for the payment of money, directly or by way of set-off or counterclaim." So that in this case the amount of money disclosed by the evidence to have been paid on the mortgage by cash and credit should, under the equitable principles of restitution and unjust enrichment be credited on the mortgage and if this sum is sufficient to pay the mortgage in full with interest, as seems to be herein indicated, then the guardian should be directed to satisfy the mortgage.

In *Gorgas v. Saxman,* 216 Pa. 237, 65 A. 619 (1907), the Supreme Court held that failure to pay a weak-minded person installment payments when due subjected the payer to an interest charge on the installments. Here, according to the documentary evidence and the evidence of the appellant, the weak-minded person, was paid and the evidence clearly discloses that he did in fact occupy the garage and the apartment under the rental agreements. And although there is no evidence as to the fair rental value of the property neither is there any evidence that it is not fair. The sums of $7 per month for a garage and $40 to $50 a month for an apartment seem reasonable, so that the weak-minded person did receive the benefits.

There was no evidence in the record to establish that the appellant had any knowledge of the mental

incapacity of Scott or even that there was lack of comprehension by Scott of the nature of the transactions at the time of the execution of the documents. People are not obliged to be filled with suspicion of the sanity of others with whom they deal. Sanity being the normal condition, an allegation of unsoundness casts the burden of proof on those who assert it. *Youngwood B. & L. Assn. v. Henry,* 137 Pa. Superior Ct. 124, 8 A. 2d 427 (1939). See also: *Feely Estate,* 173 Pa. Superior Ct. 441, 450, 98 A. 2d 738 (1953).

But in this case the court below had before it not only the testimony of the appellant and the documentary evidence but also the testimony of the appellee, the adjudged incompetent. He was examined by Judge Marshall, who, in his opinion said, "This case is somewhat confusing because the defendant was questioned by this Court which was of the opinion that he was competent." And again in Judge Marshall's opinion, written for the court en banc, "The Court concedes that Scott, although still not adjudged competent by the Orphans' Court, is in fact now competent."

Scott corroborates the appellant in every detail. He identifies the documents and testifies to their validity; he testifies to his residence in the apartment and his use of the garage; and testifies that his furniture and personal property remained in the apartment while he was a patient in the hospital.

It is well settled that incompetency of a witness does not necessarily follow from insanity. *Com. v. Kosh,* 305 Pa. 146, 157 A. 479 (1931). There is nothing in this record to indicate that Scott's incompetency in February, or at any time, approached insanity. However, the court below clearly disposed of that problem by finding that he was competent to testify at the time of the hearing. The cases are clear that even insaninty does not bar testimony but the court

must determine preliminarily that the witness has sufficient understanding to comprehend the obligation of an oath and to give a correct account of the matters involved. The court below does not hesitate to decide that Scott was a competent witness and there was no effort to show his incompetency by the guardian at the time he was called. The burden of proof of incompetency is on the party alleging it. *Com. v. Bartell,* 184 Pa. Superior Ct. 528, 136 A. 2d 166 (1957); *Sigel Appeal,* 372 Pa. 527, 94 A. 2d 761 (1953).

Judge ERVIN speaking for this Court in *Com. v. Capozoli,* 186 Pa. Superior Ct. 282, 142 A. 2d 465 (1958) said, "It would be too dangerous to permit these convictions to stand when the victim says 'these are not the men who robbed me' ". While in this case the alleged weak-minded person, declared by the court to be presently competent to testify says in effect, yes she paid me the money; the documents are valid; and yes, I used the garage and lived in the apartment.

In *Masciantonio Will,* 392 Pa. 362, at page 367, 141 A. 2d 362, at page 365 (1958), the Supreme Court said, "In reviewing this decree of the court below we are mindful that the findings of an Orphans' Court judge, who heard the testimony without a jury, are entitled to the weight of a jury's verdict and are controlling upon us and that its decree should not be reversed unless it appears that the court has abused its discretion. Williams v. McCarroll, 374 Pa. 281, 298, 97 A. 2d 14. See also Kerr v. O'Donovan, 389 Pa. 614, 629, 134 A. 2d 213; Farmer Will, 385 Pa. 486, 487, 123 A. 2d 630. However, we are also mindful that if it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence the court's findings may be set aside: Mohler's Estate, 343 Pa. 299, 305, 22 A. 2d 680. The test is not whether we, the

appellate court, would have reached the same result had we been acting as the hearing judge who saw and heard the witness, ' " 'but rather whether a judicial mind, on due consideration of the evidence as a whole, could reasonably have reached the conclusion of the chancellor' " '. Shuey v. Shuey, 340 Pa. 27, 32, 16 A. 2d 4, 6."

Here, there was no evidence on behalf of the guardian and the court capriciously in the name of suspicion and imagination disregarded all the evidence, including the documents.

The decree of the court below is reversed and the record is remitted to that court to enter a decree in conformity with this opinion.