Wallace E. MARTENS, Appellant,

v.

Edward H. METZGAR and Mary S. Metzgar, Appellees.

No. 3536.

Supreme Court of Alaska.

March 2, 1979.

Murphy L. Clark, Anchorage, for appellant.

James M. Bendell, Robert H. Reynolds, of Robinson, McCaskey, Reynolds & Frankel, Albert C. Simmons, Anchorage, for appellees.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR and MATTHEWS, JJ.

## OPINION

RABINOWITZ, Justice.

This case is presently before this court for the second time. The factual circumstances which gave rise to the appeal were described in detail in *Martens v. Metzgar,* 524 P.2d 666 (Alaska 1974). Therefore, only such facts as are essential to an understanding of this second appeal will be alluded to in this opinion.

As in the original appeal, the present appeal involves a dispute as to which party should pay the costs of utility improvements which were constructed adjacent to twelve lots in the Geneva Woods subdivision in Anchorage. Following a lengthy non-jury trial, the superior court found that there was no express written contract between the subdivider, Wallace Martens, and the Metzgars relating to the obligation to construct or pay for utility improvements in the subdivision. In rejecting Martens' claim for recovery on a theory of unjust enrichment the trial court specifically found that, at the time Metzgar entered into the written agreement for the purchase of the twelve lots, he reasonably believed that the purchase price of $91,500 included the cost of utility improvements. Overall, the superior court concluded that Martens had failed to establish by a preponderance of the evidence the requisite elements for recovery of the costs of the utility improvements under either an express, an implied-in-fact, or an implied-in-law contract theory. Accordingly, judgment was entered in favor of the Metzgars.

In *Martens v. Metzgar,* 524 P.2d 666 (Alaska 1974), we sustained the bulk of the superior court's ruling which had been specified as error in that appeal. Nevertheless, it was concluded that the case should be remanded because of the superior court's erroneous preclusion of Martens' offer to use the deposition of Howard Hall.[1] Hall's deposition was relevant and material because the Metzgars had grounded their belief that the price of the lots included the cost of utility improvements on alleged oral statements made by the real estate agent Hall. More particularly, we wrote:

> Our study of the record convinces us that this finding of the superior court relating to Metzgar's belief played a crucial role in its determination that it would not be inequitable to allow Metzgar to retain the benefits of the improvements in question without paying a prorated share of their costs. Given the central role accorded to Metzgar's belief that the price he paid for

---

1. On this point, we stated in *Martens v. Metzgar,* 524 P.2d 666, 675 (Alaska 1974) (footnotes omitted):

    At trial, counsel for Metzgar objected to Martens' use of the Hall deposition on the grounds that he had not received notice in accordance with our Rules of Civil Procedure. After reviewing the written, as well as the oral testimony going to this question, the superior court ruled that Martens was not entitled to use Hall's deposition. We have concluded that this ruling was erroneous in light of the circumstances appearing in this record.

the lots included the costs of all utility improvements, we now turn to Martens' claim that the trial court erroneously excluded Howard Hall's deposition.

We alluded earlier in the opinion to the fact that Hall was a realtor connected with McQuaid Realty, which was given the exclusive right by Martens to sell property within the Geneva Woods Subdivision. In his deposition, Hall testified that he told Metzgar that 'The sale price was with the Lots without assessments.' This is the only evidence offered by Martens at the trial which contradicts the testimony of the Metzgars as to what they were told concerning inclusion of the costs of improvements in the price of the lots. Thus, any error committed by the superior court in excluding the deposition cannot, in the context of the circumstances surrounding the quasi-contract issue in the case at bar, be characterized as harmless error.[2]

In light of the foregoing, we concluded that the case had to be remanded for the primary purpose of taking Howard Hall's testimony, so far as it was relevant to resolution of Martens' claim for relief based on quasi-contract or unjust enrichment. We further stated:

If, after consideration of Hall's testimony and any new evidence deemed appropriate, it is concluded that it would be inequitable to permit the Metzgars to retain the benefit of the utility improvements without payment of a prorated share of their value, then the trial court is to determine the amount that the Metzgars should pay to Martens.[3]

Upon remand, the superior court heard the video tape deposition of Howard Hall and the further testimony of two rebuttal witnesses for appellees.[4] Hall stated in his deposition testimony that the purchase price did not include the costs of the improvements. The superior court then entered a "Memorandum of Supplemental Findings of Fact and Decision" in which the court found, in part, that:

4. Despite the additional evidence presented, I remain convinced that prior to their purchase the Metzgars believed that the purchase price included the cost of utility improvements and that such belief was reasonable under the circumstances.[5]

Upon consideration of its supplemental findings, the superior court concluded:

Given the Metzgars' understanding of what they were purchasing, and the added fact that they apparently never attempted to make any actual use of the utilities installed, I conclude that it would be inequitable to impose the cost of these utility improvements upon them at this time. As I view the evidence, the Metzgars were not *unjustly* enriched. Therefore, plaintiff is not entitled to recover on a quasi-contract basis. [emphasis in original]

The paramount issue in this second appeal is whether the superior court erred in rejecting Hall's and Martens' testimony and in finding that the Metzgars rea-

---

2. *Id.* at 674–75 (footnotes omitted).

3. *Id.* at 677–78 (footnotes omitted).

4. Edward H. Metzgar and Charles N. Allen testified in rebuttal to the deposition of Howard Hall.

5. In addition to this finding of fact, the superior court made the following supplemental findings of fact:

1. Edward H. Metzgar's testimony, that Howard Hall had assured him that the purchase price he agreed to pay included the cost of the improvements to be later installed, is more worthy of belief than the contrary testimony of Howard Hall.

2. Mary S. Metzgar's testimony, that Howard Hall had assured her that the cost of the lots purchased by plaintiffs included the cost of the improvements, is likewise worthy of belief, and tends to corroborate the testimony of her husband.

3. Howard Hall's testimony that he informed the Metzgars that the sale price did not include the cost of the improvements is not believable to me. I view that testimony as being probably the result of innocent misrecollection, although possibly the result of intentional misstatement. In either event I do not believe that part of Hall's testimony.

sonably believed that the purchase price included the improvements. In deciding this question, we recognize that it is not our appellate function to reweigh evidence which was adduced before the trial court or to substitute our own judgment for that of the trial court.[6] Deference to the findings of the superior court is particularly appropriate when, as in this case, the bulk of the evidence at trial is oral testimony.[7] Further, it is well established that this court will only disturb trial court findings when we are convinced that they were clearly erroneous; that is, when we are left with a definite and firm conviction on the entire record that a mistake has been made, even though there may be evidence to support the finding.[8]

Application of the foregoing principles has left us with the definite and firm conviction that the superior court was mistaken in its findings which formed the basis for its ultimate conclusion that the Metzgars reasonably believed that the purchase price of the twelve lots in the Geneva Woods subdivision included the costs of utility improvements. This holding is reached for several reasons. Overall, we think it significant that there is an absence of corroborative evidence to support the Metzgars' understanding that the costs of the utilities were included in the purchase price of the twelve lots. The written agreement between the parties governing the sale of the subdivision lots does not impose any obligation upon Martens either to construct or bear the costs of utility improvements. However, the cost of construction of the utility improvements exceeded fifty percent of the purchase price of the lots. Given this fact, and in view of the contention that the written agreement covered more than the sale of the raw land, it is highly improbable that the agreement would not have specified that such improvements were to be included in the purchase price. Additionally, the escrow instruction pertaining to the lots provided that the Metzgars would be subject to and pay for all assessments levied for improvements. This escrow instruction obviously implies that there would be assessments levied for improvements. Therefore, if the Metzgars had reasonably believed that the utility improvements would be put in at no cost to them, the agreement should have specified that there would be no assessments for such improvements.

Further, Edward Metzgar testified in another proceeding that he was never told whether or not he would be responsible for the cost of putting in any utility improvements.[9] Also of significance is the fact that Metzgar gave Martens a special power of attorney for the purpose of creating a special assessment district for the construction of improvements. If Metzgar had reasonably believed that he would not be charged with such assessments, it seems likely that he would have placed a provision in the power of attorney agreement to the effect that such assessments would be at no cost to him and without assessment for those improvements on the lots owned by him, or at least that he would have had a separate agreement with Martens to that effect.

6. *Moore v. State*, 553 P.2d 8, 15, n.3 (Alaska 1976); *Stansberry v. Manson*, 420 P.2d 449, 450 (Alaska 1966); *Preferred Gen. Agency of Alaska, Inc. v. Rafetto*, 391 P.2d 951, 952 (Alaska 1964).

7. *See Jackson v. White*, 556 P.2d 530, 532 (Alaska 1976); *Alaska Placer Co. v. Lee*, 553 P.2d 54, 59 (Alaska 1976); *Alaska Foods, Inc. v. American Mfg.'s Mut. Ins. Co.*, 482 P.2d 842, 843 (Alaska 1971); *Monsma v. Williams*, 385 P.2d 107, 110 (Alaska 1963).

8. Alaska Rule of Civil Procedure 52(a). *See City of Kenai v. Filler*, 566 P.2d 670, 677 (Alaska 1977), *quoting Alaska Placer Co. v. Lee*, 553 P.2d 54, 59 (Alaska 1976). *See also Curt's Trucking Co. v. City of Anchorage*, 578 P.2d 975, 977, n.6 (Alaska 1978); *Alaska Gay Coalition v. Sullivan*, 578 P.2d 951, 956, n.7 (Alaska 1978); *Saxton v. Splettstoezer*, 557 P.2d 1126, 1127 (Alaska 1977).

9. *See* February 26, 1970, deposition of Edward Metzgar in *State v. Martens*, No. 68–2082(B), at 22–66, and in particular pages 53 and 66. Though this deposition was not before the superior court in the original trial of this matter, counsel for appellant asked the superior court to take judicial notice of the deposition in the proceedings upon remand by this court.

In light of the foregoing, we conclude that it would be inequitable to permit the Metzgars to retain the benefit of a prorated share of the value of the utility improvements. Thus, the matter is remanded to the superior court with directions to enter judgment for Martens on his quasi-contract claim for relief after the superior court has determined the amount that the Metzgars should pay to Martens.[10]

Reversed and Remanded for further proceedings in accordance with this opinion.

10. In this regard, in *Martens v. Metzgar*, 524 P.2d 666, 678 n.32 (Alaska 1974), we stated: "It will be unnecessary to take any additional evidence regarding this question as this subject was gone into extensively at trial."