672 P.2d 1307 (1983)
Skelly HEBERT and Viola Hebert, Appellants,
v.
Donna M. BAILEY, Appellee.
No. 7121.
Supreme Court of Alaska.
November 25, 1983.
*1308 John W. Colver, Warren C. Colver, Warren C. Colver & Associates, Anchorage, for appellants.
M. Ashley Dickerson, Inc., Anchorage, for appellee.
Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

OPINION
PER CURIAM
This is an appeal brought by Skelly and Viola Hebert from the judgment of the superior court denying them specific performance of their contract to purchase Donna Bailey's home. Following a non-jury trial, the superior court held that Bailey's contractual obligation to sell her house to the Heberts was void because at the time she executed the earnest money agreement her mental condition prevented her from understanding the nature and consequences of the transaction. For the reasons set forth below, we affirm the court's judgment.

I. FACTUAL AND PROCEDURAL BACKGROUND
In August 1980, Donna Bailey decided to sell her three-bedroom home, located on Cope Street in Anchorage, Alaska. She had purchased the house with her husband in the late 1960's, and it had been awarded to her in 1977 when she and her husband were divorced. In 1980, the mortgage payments on the house were $239.00 per month. Bailey asserts that, because of her poor health and irregular employment, she wished to purchase another house "in the country" that she could pay for entirely and thus be free of mortgage payments. She expected the sale of her Cope Street home to be contingent upon her finding a house to purchase in the country.
On August 12 or 13, 1980, Bailey telephoned Metropolitan Realty in Anchorage and asked to speak to a particular agent, recommended to her by a friend. That person was no longer with Metropolitan Realty, so Bailey spoke with another agent, Frank Irwin, instead. On August 13, Bailey showed her house to Irwin and discussed the sale price. Based upon the sale prices of similar homes in the neighborhood, Irwin recommended that Bailey list the house at $68,500.00. Bailey then signed a listing agreement, by which the house was listed with Metropolitan Realty for four months at a price of $68,500.00.
Skelly and Viola Hebert lived in Delta, Alaska, and wished to purchase a house in and move to Anchorage. Their son and daughter-in-law, David and Sandy Hebert, agreed to help them find a house. They contacted an acquaintance of theirs, Patricia M. Kruger, who is a broker with DOB Realty in Anchorage, and described the type of house Skelly and Viola wished to purchase. Kruger found a reference to Bailey's house in the Multiple Listing Service and contacted Irwin to set up an appointment for David and Sandy to see the house.
On August 27, Kruger took David and Sandy to see the house. Bailey showed them around the place for approximately thirty minutes. They were apparently impressed with the house, and later that day Skelly and Viola executed an earnest money agreement, offering to purchase the house for the requested $68,500.00.
On August 28, Kruger met with Bailey and Irwin at Bailey's house to present the Heberts' offer. Irwin explained the transaction to Bailey "step-by-step," and informed her that she would net approximately $41,500.00 from the sale. Bailey inquired what would happen if the Heberts *1309 did not complete the transaction. Irwin explained that if the sale did not go through because the Heberts did not qualify for financing, then the earnest money paid to her would have to be refunded. If, however, the Heberts merely decided not to complete the transaction because they changed their minds, then Bailey would be able to keep the earnest money deposited. The earnest money specified in the agreement was only $200.00. At the advice of Irwin, Bailey requested that the amount be increased to $1000.00. This was done, and all parties initialed the change.
That same day, Bailey signed the agreement at the bottom under the heading "ACCEPTANCE BY SELLER." The first paragraph following the heading states: "I/We accept the foregoing offer and agree to sell and convey the property described on the terms and conditions herein stated. I/We understand this is a legally binding contract." Before Bailey signed, Kruger told her that it was a "legal and binding contract, if it's signed." Bailey showed the contract to her son, who was present. He looked it over and, according to Kruger, told Bailey that it "looked all right." Bailey then signed it.
At that time, Kruger and Bailey discussed Bailey's wish to purchase a place out in the country. Kruger informed Bailey of a place she thought was for sale in the Matanuska Valley. Bailey requested more information about it. As it turned out, the place was already sold. Kruger subsequently informed Bailey of this. No further action was taken to find a new house for Bailey.
In September 1980, Bailey entered the hospital for gall bladder surgery. She was there for ten days and then was taken to the Pioneer Home in Palmer for twelve days. While she was in the hospital, Irwin contacted her to say that he needed $135.00 from her to pay for an appraisal of the house. She explained that she did not have the money, and then stated that she had not sold her house and would not sell it. Because Bailey had just come out of surgery, the conversation ended without any resolution of the subject.
On November 4, 1980, Irwin met with Bailey to review the transaction with her. He informed her that the contract was binding and enforceable. He suggested to Bailey that, if she no longer wished to continue with the contract, she should seek legal advice.
On December 30, 1980, the Heberts filed suit for specific performance. Bailey answered the suit, asserting as an affirmative defense that the Heberts were "guilty of fraud overreaching and extreme oppression in the attempts to force [Bailey] to honor an illegal commitment in the inducement of same." The Heberts moved for a partial summary judgment on the issue of whether they were entitled to specific performance of the contract. This motion was denied because the court held that a genuine issue of fact existed, precluding summary judgment. The court stated that the factual issue "of whether fraud occurred is presented by the sub-issues of whether at the time of the signing of the Earnest Money Agreement [Bailey] lacked the capacity to reason and understand the nature and consequences of her acts, and if so, whether [the Heberts] had, or should have had, knowledge of her condition at the time [Bailey] signed the Agreement." Following a non-jury trial, the court entered judgment for Bailey, concluding that specific performance of the contract would be inequitable because, as a result of her mental condition, Bailey was unable to understand the nature and consequences of signing the earnest money agreement, and the contract was therefore voidable and void. From this judgment, the Heberts appeal.

II. EVIDENCE OF INCAPACITY
The superior court found that, as a result of her mental condition, Bailey was unable to understand the nature and consequences of signing the contract to sell her house, and concluded that the contract was therefore voidable and void. The Heberts contend that the superior court's finding of incapacity was clearly erroneous. We disagree.[1] *1310 In accordance with Civil Rule 52(a), "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." As we stated in Martens v. Metzgar, 591 P.2d 541, 544 (Alaska 1979), we will disturb trial court findings only "when we are left with a definite and firm conviction on the entire record that a mistake has been made, even though there may be evidence to support the finding." (Footnote omitted)
In this case, we are not left with the definite and firm conviction that the superior court erred in its finding of incapacity. Bailey testified that she did not read or understand the earnest money agreement; she thought that it was merely a "continuation of negotiations," and that a contract would be entered into at a later time, when she found a house to purchase in the country. Evidence was introduced that Bailey "had suffered serious health problems, having suffered psychological problems, including a nervous breakdown during 1976, and had undergone substantial psychiatric care." Similarly, there was evidence that Bailey had been diagnosed as a manic depressive. Finally, evidence established that on October 29, 1980, two months after Bailey signed the contract, a physician advised Bailey not to engage in any business transactions because of her severe depression at that time. Although no evidence was introduced that on August 28, 1980, when Bailey signed the earnest money agreement, she suffered a mental illness or defect that prevented her from being able to understand the transaction, the evidence reasonably supports such an inference.
AFFIRMED.
NOTES
[1] The Heberts also argue that it was improper for the court to hold that the contract was void due to Bailey's incapacity because Bailey never alleged "lack of capacity," but instead argued that the Heberts were "guilty of fraud," which was not established at trial. The Heberts further argue that the medical records arguably establishing Bailey's lack of capacity were improperly admitted into evidence. In our view, these arguments are without merit.