William and Sheryl **PAPPERT,**
**Appellants,**

v.

Virginia **SARGENT, individually and as**
**Guardian Ad Litem for Harold**
**Sargent, Appellee.**

No. S–4021.

Supreme Court of Alaska.

Feb. 12, 1993.

Rehearing Denied March 2, 1993.

Susan S. McLean, Gray, McLean, Cole & Razo, Kodiak, for appellants.

Joel H. Bolger, Walter W. Mason, Jamin, Ebell, Bolger & Gentry, Kodiak, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

William and Sheryl Pappert appeal the trial court's decision to rescind their 1981 transaction with Harold Sargent, in which the Papperts traded a mobile home for Mr. Sargent's property on Ugak Bay. The trial court found that Mr. Sargent was incompetent when he traded the property and that the Papperts knew or should have known of his condition. The trial court therefore voided the transaction and denied the Papperts restitution. Although the record supports the trial court's finding that Mr. Sargent was incompetent, it does not support the court's finding that the Papperts were aware of his condition. We therefore remand this case to the trial court to determine the proper restitutionary remedy.

## I. FACTS AND PROCEEDINGS

Harold Sargent and his wife Virginia moved to Kodiak in 1965 and started operating the Kalsin Bay Inn in the early 1970s. In 1978, the Sargents took over a nearby cattle ranching operation. William Pappert and Mr. Sargent were friends who met frequently during the 1970s at the Kalsin Bay Inn. In late 1978, Mr. Pappert purchased a 1965 Kozy mobile home for $8,000. Mr. Pappert moved the trailer on Mr. Sargent's land near the American River in the spring of 1979. The Papperts lived in the trailer for eighteen months, adding a mud room and making other improvements worth approximately $3,000.

In the spring of 1981, the Papperts reached an oral agreement with Mr. Sargent in which they would trade the mobile home for his property at Ugak Bay. In August 1981, Mr. Sargent executed a deed to the Ugak Bay property, transferring all of his interest to the Papperts.

Mrs. Sargent first learned of the transaction with the Papperts in early 1982 while reviewing business records for tax purposes.[1] After she consulted with Dr. Nemiroff and her lawyer, her lawyer notified the Papperts that Mr. Sargent had not been competent when he executed the deed. The Papperts recorded their deed the next day. In March 1983 Mrs. Sargent filed a complaint for rescission of the transaction. Although the parties agreed that Mr. Sargent's condition should be evaluated, the court refused to approve the evaluation because Mrs. Sargent had failed to obtain legal status as Mr. Sargent's guardian. Mrs. Sargent took no further action for over four years. Mrs. Sargent finally reinitiated the action in December 1988 in her capacity as representative of Mr. Sargent's estate.

At trial, Mrs. Sargent entered the deposition of Dr. Nemiroff to establish that Mr. Sargent was incompetent in August 1981. Dr. Nemiroff treated Mr. Sargent from approximately September 1980 through the time period relevant to this case. In the fall of 1980, Dr. Nemiroff diagnosed Mr. Sargent as suffering from chronic obstructive pulmonary disease, including acute and chronic bronchitis, emphysema, and asthma. According to Dr. Nemiroff these conditions generally lead to lowered levels of oxygen and elevated carbon dioxide levels in the blood, often resulting in headaches, confusion, and lack of normal judgment. In June 1981, Dr. Nemiroff diagnosed Mr. Sargent as having suffered from a transient ischemic attack ("TIA"). He described a TIA as a condition in which the brain is not getting enough blood, and he thought that there was potential for a stroke. Mr. Sargent's condition continued to deteriorate after the TIAs began, and Dr. Nemiroff estimated that Mr. Sargent had over one hundred TIAs between July and December of 1981. Dr. Nemiroff noted that the effects of a TIA may include clouded judgment and affected motor ability such as temporary paralysis of a limb. He distinguished a TIA from a stroke by observing that the paralysis of an arm or a leg resulting from a TIA would go away in a few minutes to a few hours, but paralysis resulting from a stroke would be more permanent. Dr. Nemiroff offered his opinion that, in the summer of 1981, Mr. Sar-

---

1. Mr. Sargent suffered strokes in October and December 1981, and his physical condition steadily deteriorated over the next four years. He died in 1986.

gent would have had trouble making judgments at every moment of the day about transactions such as real estate contracts.

Mrs. Sargent, Dorothy Hopper and Thomas Truitt testified to the physical and mental manifestations of Mr. Sargent's condition. Mrs. Sargent testified that Mr. Sargent suffered TIA attacks almost on a daily basis during the summer of 1981 and that these attacks would last one or two minutes, leaving him exhausted. She also testified that her husband could not remember things and that he would leave words out of sentences.

Ms. Hopper worked with Mr. Sargent on a daily basis in the kitchen of the Kalsin Bay Inn. She testified that Mr. Sargent became increasingly forgetful over the summer, that he was unable to control his body or communicate during his attacks and that he sometimes could not perform the simplest routine tasks. She emphasized that she and Mrs. Sargent had to keep a very close eye on him. Ms. Hopper further testified that these changes in Mr. Sargent's behavior would be noticed by someone who knew him well and worked closely with him.

Mr. Truitt worked as a ranch hand during the summer of 1981 and also saw Mr. Sargent on a daily basis. He testified that he witnessed some of Mr. Sargent's attacks and that he believed at the time that Mr. Sargent was having trouble breathing. He also testified that Mr. Sargent was "doing things different" that summer, but that, at the time, he "didn't take any meaning to it at all, it was just Sarge."

The Pappers testified that they saw Mr. Sargent several times a week at the Kalsin Bay Inn and noticed some of his physical problems, but that neither of them thought that these problems reflected any mental incapacity.

At the close of evidence, Superior Court Judge J. Justin Ripley found that Mrs. Sargent had established, by a preponderance of the evidence, that Mr. Sargent was incompetent when he signed the deed in August 1981. The court further found that the manifestations of Mr. Sargent's incapacity were sufficiently obvious that the Pappers knew or should have known that Mr. Sargent was unable to act in a reasonable manner in relation to the transaction. Judge Ripley voided the transaction and concluded that the Pappers were not entitled to restitution. The court subsequently awarded Mrs. Sargent $6,000 in attorney's fees. This figure represented 50% of Mrs. Sargent's actual fees augmented by an additional 15% due to the court's finding that the Pappers "knew or should have known of Sarge's condition, and the implications to be drawn therefrom." This appeal followed.

## II. DISCUSSION

### A: MR. SARGENT'S INCOMPETENCY

■ The trial court found that Mr. Sargent was unable to understand the nature and consequences of the August 1981 transaction. The Pappers contend that the trial court's finding of incompetency was clearly erroneous.[2] We disagree.

Dr. Nemiroff testified that Mr. Sargent would have had difficulty making judgments about real estate transactions during the summer of 1981.[3] Testimony by Mr. Sargent's employees and his wife indicated that Mr. Sargent was often forgetful and confused during this time. Although the evidence of incompetency in August 1981 is not overwhelming, deference to the findings of the trial court is particularly appropriate when, as in this case, "the bulk of the evidence at trial is oral testimony."

---

**2.** We will disturb the trial court's findings of fact only when we are left with a definite and firm conviction on the entire record that a mistake has been made. *Parker v. Northern Mixing Co.,* 756 P.2d 881, 891 n. 23 (Alaska 1988).

**3.** We are not persuaded by the Pappers' claim that Dr. Nemiroff was not qualified to offer an opinion as to Mr. Sargent's competency. Al-

though Dr. Nemiroff is not a neurologist, he has had extensive experience in the effects of oxygen deprivation. *Cf. Stallworth v. Ward,* 249 Ala. 505, 31 So.2d 324, 326 (1947) (medical doctor's professional opinion concerning competency of his patient should be accorded greater weight than the opinion of non-expert witnesses).

*Martens v. Metzgar,* 591 P.2d 541, 544 (Alaska 1979).

## B: THE PAPPERTS' KNOWLEDGE OF MR. SARGENT'S INCOMPETENCY

The trial court also found that "[a]nyone with an eye to see it would have known that Mr. Sargent ... was not uniformly right in his thinking, recall and other mental functioning" and ruled that the Papperts knew or should have known that Mr. Sargent was incompetent. After reviewing the record, we conclude that this finding is clearly erroneous.

Dr. Nemiroff's expert opinion concerning Mr. Sargent's condition was based on his extensive experience with the incapacitating effects of lung disease and oxygen deprivation and we do not believe that laypersons can reasonably be charged with such knowledge. We also conclude that the testimony of Mrs. Sargent and her employees, taken in the light most favorable to Mrs. Sargent, fails to establish that a person having dealings with Mr. Sargent would be plainly aware of his lack of competency to contract. The record reveals that those who saw Mr. Sargent on a daily basis noticed that he was increasingly forgetful and confused but fails to establish that these changes would be noticed by someone who did not work closely with him. Nor does the testimony establish that his deteriorating mental condition was generally known. *Cf. Citizen's Nat'l Bank v. Gardner,* 147 Iowa 695, 125 N.W. 161 (1910) (knowledge of person's excessive drug use together with his general reputation of incompetency held sufficient to charge another with knowledge of his incompetency); *Sprinkle v. Wellborn,* 140 N.C. 163, 52 S.E. 666 (1905) (when person contracts with obviously intoxicated person, knowledge of incompetency may be presumed). Although it was obvious that Mr. Sargent was quite ill, awareness of his physical condition would not necessarily lead a reasonable person to conclude that

Mr. Sargent was incapable of making a reasoned decision.

It is also significant that Mr. Sargent was still nominally running both of the businesses in the summer of 1981. Although his employees and his wife believed that he was losing it, they strove to make him think that he was still in charge. It is only reasonable to conclude that their efforts would encourage others to believe that Mr. Sargent was still in control of his affairs. "People are not obliged to be filled with suspicion of the sanity of others with whom they deal." *McClaney v. Scott,* 188 Pa.Super. 328, 146 A.2d 653, 656 (1958). Although the parties dispute the market values of the mobile home and the Ugak Bay property at the time of the trade, the trial court's findings indicate that the terms of the transaction itself were not unfair. In the absence of solid evidence, we hold that the mere possibility of bad faith is insufficient. On the record presented, there is simply no basis to find that the Papperts should have been aware that Mr. Sargent was not competent to complete this transaction.

## C: RESTITUTION

In general, a party who contracts with an incompetent person in good faith, without actual or constructive knowledge of his condition, is entitled to restitution.[4] *See Metter Banking Co. v. Millen Lumber & Supply Co., Inc.,* 191 Ga.App. 634, 382 S.E.2d 624, 628 (1989); *Pennsylvania Co. for Banking & Trusts v. Philadelphia Title Ins. Co.,* 372 Pa. 259, 93 A.2d 687, 690 (1953). This rule is founded on the equitable principle that it is fundamentally unfair to allow a person to repudiate a contract without returning the benefits received thereunder. *See Pennsylvania Co.,* 93 A.2d at 690. Thus a party's right to void a contract due to incompetency may be defeated if he cannot restore the other party to his original position.

The Restatement (Second) of Contracts clearly lays out the factors a trial

---

4. Although the Papperts did not raise the issue of restitution until final argument before the trial court, we believe that failure to consider this issue on appeal would constitute "plain error." *Sea Lion Corp. v. Air Logistics of Alaska, Inc.,* 787 P.2d 109, 115 (Alaska 1990).

court should take into account when faced with this type of situation.

> If the contract is made on fair terms and the other party has no reason to know of the incompetency, performance in whole or in part may so change the situation that the parties cannot be restored to their previous positions or may otherwise render avoidance inequitable. The contract then ceases to be voidable. Where the other party, though acting in good faith, had reason to know of the incompetency at the time of contracting or performance, or where the equities can be partially adjusted by the decree, the court may grant or deny relief as the situation requires. Factors to be taken into account in such cases include not only benefits conferred and received on both sides but also the extent to which avoidance will benefit the incompetent and the extent to which others who will benefit from avoidance had opportunities to prevent the situation from arising.

Restatement (Second) of Contracts § 15, comment f (1981); *see also Davis v. Colorado Kenworth Corp.*, 156 Colo. 98, 396 P.2d 958, 961–62 (1964) (where the contract is made on fair terms and the other party is without knowledge of the incompetency, the power to void the contract terminates to the extent that the contract has been performed). Since we conclude that the Papperts could not reasonably be expected to know of Mr. Sargent's condition, they are entitled to restitution.[5]

In this case the passage of time makes a return to the status quo in 1981 impossible—the parties agree that the mobile home has significantly depreciated in value. In its oral findings, the trial court recognized the unfairness of rescinding the transaction at this late date, but declined to order any further restitution, commenting that the Papperts had had an opportunity to resolve this dispute at an earlier time but had failed to do so. On our review of the record, this result is clearly inequitable. Mrs. Sargent filed this action in 1983 but was unable to proceed further because she had neglected to obtain formal guardianship of Mr. Sargent. She only reinitiated the action in 1988, two years after Mr. Sargent's death. Since we conclude that the Papperts should not be charged with knowledge of Mr. Sargent's condition, they are entitled to some form of restitution. Thus we remand this case to the trial court to determine the proper measure of restitution. If, after a hearing, the court determines that meaningful restitution is not possible, it should decline to void the transaction. *See Sprinkle v. Wellborn*, 140 N.C. 163, 52 S.E. 666 (1905) (contract voidable on grounds of incompetency should not be set aside where other party had no notice of incompetency and derived no inequitable advantage from the contract and the parties cannot be returned to their original positions); *Davis*, 396 P.2d at 961–62.

## D: ATTORNEY'S FEES

■ Where there is no money judgment in a case, attorney's fees may be awarded by the trial court "in its discretion in a reasonable amount." Alaska R.Civ.P. 82(a)(1). The purpose of Rule 82 is to partially compensate a prevailing party for the costs and fees incurred where such compensation is justified but not to penalize a party for litigating a good faith claim. *Malvo v. J.C. Penney, Inc.*, 512 P.2d 575, 588 (Alaska 1973). However, where there is evidence that the losing party did not have a good faith claim, the trial court may appropriately impose a heavier burden, up to and including the full amount of the fees requested. *Id.*

In this case, the trial court ordered a 15% augmentation of its fee award on the grounds that the Papperts "knew or should have known of [Mr. Sargent's] condition, and the implications to be drawn therefrom." Since the trial court concluded that

---

**5.** We emphasize that in an action to set aside a deed or contract on the grounds of the incompetency of one of the parties, it is not necessary to show that the other party knew or should have known of the incompetency. *Metter Banking*, 382 S.E.2d at 628; *see, e.g., Hebert v. Bailey*, 672 P.2d 1307 (Alaska 1983). Actual or constructive knowledge of a party's competence is only relevant if a party is seeking to avoid restitution or to establish fraud. *See Metter Banking*, 382 S.E.2d at 628; *Hunt v. Golden*, 271 Or. 321, 532 P.2d 26, 28 (1975).

the Papperts knew all along that Mr. Sargent was not competent, it apparently reasoned that they had litigated this case in bad faith. Since we have held that this finding was erroneous, we vacate that portion of the fee award.

### III. CONCLUSION

We therefore AFFIRM the trial court's finding of incompetency, REVERSE its finding concerning the Papperts' knowledge of Mr. Sargent's condition, VACATE the augmented portion of the fee award and REMAND for further proceedings to determine the proper restitutionary remedy.

BURKE, Justice, with whom COMPTON, Justice, joins, dissenting.

I dissent. I believe the record supports the trial court's finding that the Papperts knew or should have known, when dealing with Sargent, that Sargent was incompetent. Accordingly, I would affirm the judgment below.

I am authorized to state that Justice COMPTON joins in my dissent.