CHEVES-GREEN & COMPANY INC. *v.* HORTON *et al.*

No. 9667.  AUGUST 10, 1933.

*William H. Mewbourne,* for plaintiff in error.
*Colquitt, Parker, Troutman & Arkwright, Harllee Branch Jr., W. A. McClain,* and *Bryan, Middlebrooks & Carter,* contra.

BECK, P. J.  Mrs. Earl Horton, suing for herself individually and as next friend of her children, who are minors, filed an equitable petition, in which Cheves-Green & Co. Inc., Mrs. Clifford Mitchell, administratrix of the estate of Mrs. Frances J. Horton, Mrs. Annie Williams, and Columbus Mutual Life Insurance Company are named as defendants, alleging in substance as follows: Petitioners are the widow and surviving children, respectively, of Earl Horton, who died intestate in the City of Atlanta on December 27, 1932, being at the time of his death entitled as an heir to a one-fourth undivided interest in a certain lot and building located

in Atlanta, Georgia and known as 707-9 Marietta Street. The lot upon which the building was erected was devised jointly to Earl Horton and his sisters, Mrs. Leila Cawhern, Mrs. Clifford Mitchell, and Mrs. Annie Williams, by their mother, Mrs. Frances J. Horton, who died in or about the year 1920; the devise being by will duly executed, in which the named heirs and legatees were appointed joint executors of the estate, without the necessity of making bond and report as generally required by law in such cases. Mrs. Clifford Mitchell, having purchased the interest in the estate belonging to Mrs. Cawhern, with Mrs. Annie Williams exercised entire control over the property in question. For fifteen years prior to his death in December, 1932, Earl Horton suffered from an incurable malady, and in consequence of the malady and the drugs administered to him he became non compos mentis and remained so for a period of ten years prior to his death; and his condition was known to his sisters and coheirs, Mrs. Clifford Mitchell and Mrs. Annie Williams. Earl Horton, together with the members of his family, had occupied as a residence, throughout their lives, the premises described. His sisters "did by means of constant nagging, amounting to coercion in view of his condition, persuade him to move from said premises and to have the family home thereon situated torn down. The building on the premises which was torn down was replaced by another built with funds obtained from Cheves-Green & Co. Inc., and to secure this loan notes and a loan deed were signed by Earl Horton and his sisters on November 15, 1929, three years prior to his death, and at a time when he was non compos mentis and incapable of entering into a contract. His mental condition was known to his sisters, and to Cheves-Green & Co. Inc., and to the Columbus Mutual Life Insurance Company, to whom the loan deed and notes were transferred. Taxes and insurance on the property are due and unpaid; a foreclosure of the loan deed is now threatened by the Columbus Mutual Life Insurance Company through its agent Cheves-Green & Co. Inc.; and if this is consummated, the property will be sacrificed and the damage will be incapable of actual calculation. Mrs. Clifford Mitchell, as administratrix, is without funds sufficient to pay off the indebtedness or make repairs. The prayers are for appointment of a receiver to preserve the property in question, and to collect rents; for injunction to restrain foreclosure of the loan deed; and that the

notes and loan deed be declared void as against petitioners and their interest in the property. By amendments they alleged knowledge of Earl Horton's mental condition on the part of all the defendants; that he was non compos mentis at the time of signing the notes and loan deed.

Cheves-Green & Co. Inc. filed general and special demurrers, which were overruled, and it excepted to that judgment.

The court did not err in overruling the demurrers. After the amendments were filed, the petition was not subject to the special demurrers. The allegations in the petition clearly show that Earl Horton was non compos mentis at the time that he signed the notes and the loan deed referred to, and that the defendant company through its agent had notice of his mental incapacity to make a valid contract. Horton had never been adjudicated to be insane so as to render the contract void; but it was voidable, and could be so declared in a suit brought by him, or, as in this case, by his heirs.

One ground of the general demurrer is that there is no offer upon the part of the petitioners to make restitution. If Horton was non compos mentis, as is alleged in this petition, and this was known to those making the loan, an offer to make restitution was not a prerequisite in order to maintain such a suit as this in equity. Counsel for plaintiffs in error urge the decision of *Fields* v. *Union Central Life Insurance Co.*, 170 *Ga.* 239 (152 S. E. 237), where it was held as follows: "It is a condition precedent, for a mentally incompetent to relieve himself from a contract made during his incapacity, to restore the benefits received by him if such benefits are still in his possession or control. In other words, he must place the grantee, in all respects, as far as possible, in statu quo." For that ruling authorities were cited. But in that case it was further held: "If one contracts with another who is mentally incompetent, with knowledge of such incompetency, failure to make restitution by the incompetent will not prevent cancellation of such contract." It was then ruled that the allegation of knowledge of the incompetency of the maker of the paper on the part of the grantee in the deed was not sufficiently definite, clear, and certain, but that ruling did not modify in any respect the ruling stated in the sentence just quoted. In their brief counsel for plaintiffs in error say that the principle announced in headnote 6 (*a*) of the *Fields* case was ruled in *Whiteley* v. *Downs*, 174 *Ga.* 839 (164 S. E. 318).

The court did there refer to the *Fields* case, but did not modify the ruling last quoted above. And so we are of the opinion that knowledge of the mental incompetency of Earl Horton to contract is shown on the part of Cheves-Green & Co. Inc., by the allegations of the petition; and it was not necessary, in order to maintain this action, to make offer of restitution. But we are also of the opinion that ·in the event a receiver is appointed under this petition, and the notes and the loan deed securing them are set aside as to these petitioners, and the house and lot in question are sold by the receiver or disposed of under the orders of the court of equity, the heirs of the estate of Earl Horton should account to the holder of the notes and the loan deed for any part of the funds arising from a sale of the property by the receiver, or under an order of the court of equity, coming to them and which is in excess of the value of Earl Horton's interest in the estate of his mother.

*Judgment affirmed. All the Justices concur, except Hill., J., absent because of illness.*

Russell, C. J., concurring specially. I concur in the judgment of affirmance in this case, but I can not concur in the holding of the majority that in case the house and lot in question are sold by the receiver or disposed of under the orders of a court of equity, the heirs of the estate of Earl Horton should account to the holder of the notes and the loan deed for any part of the funds arising from a sale of the property by the receiver or under an order of the court of equity coming to them and which is in excess of the value of Earl Horton's interest in the estate of his mother.