72744. RIDDLE v. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY.
(348 SE2d 483)

BANKE, Chief Judge.

Riddle entered into a contract with MARTA to fabricate a display of metal sculpture and install it in a MARTA rail transit station. MARTA brought the present action to recover for Riddle's alleged breach of this contract, seeking physical possession of certain components which the appellant had fabricated but refused to deliver as well as monetary damages for the estimated cost of completing the installation work. Riddle counterclaimed to recover damages for MARTA's alleged breach of its obligations under the contract. He appeals the grant of MARTA's motion for summary judgment.

The salient facts are undisputed. On February 4, 1983, Riddle entered into a written contract with MARTA for the fabrication, delivery, and installation of the artwork in question, pursuant to a design previously submitted by him and selected by MARTA over the proposals of various other artists. MARTA agreed to pay Riddle $29,000 for the work in periodic installments, based on itemized invoices to be submitted by him as the work progressed. The original contract specified a project completion date of November 6, 1983. However, due to certain design changes requested by MARTA, the effect of which was to reduce significantly the original scope of the

project, this deadline was extended, at Riddle's request, to February 4, 1984.

On January 23, 1984, Riddle wrote a letter to MARTA's manager of architecture requesting a $1,477.33 advance on the contract price. While acknowledging that he could not meet the February 4 deadline, Riddle represented in this letter that he could complete the project within 30 days after receipt of the requested payment. MARTA made the requested payment on or about February 3, 1984, leaving a balance of only $431.67 remaining to be paid on the original $29,000 contract price.

The project was not completed within 30 days from the date of the February 3 payment but continued to be plagued by delays. During the last week of March 1984, a power outage occurred at the station, as a result of which MARTA agreed to pay Riddle's tool and equipment rental fees for that period. In May of 1984, some of Riddle's tools were stolen from a storage area which MARTA had made available to him at the station; and to enable him to secure replacement tools, MARTA subsequently consented to a 5 percent increase in the contract price, or $1,450. A draft amendment embodying this agreement and specifying a new completion deadline of July 31, 1984, was submitted to Riddle in June; however, Riddle refused to sign it due to the fact that it contained an acknowledgment that he was in default. Riddle discontinued work on the project at this time, due, in his words, to "MARTA's unfair and unreasonable requirement that I acknowledge that I was in 'default' due to project-delaying events and circumstances that were largely beyond my control."

In August of 1984, MARTA submitted to Riddle a revised draft of the amendment, omitting any acknowledgment of default on his part and specifying a completion deadline of September 30, 1984. However, Riddle declined to sign this document as well, informing MARTA that he would require a further increase in the contract price due to his need to hire an assistant to replace his son, who had previously been helping him with the project at less than a market wage and whose services were no longer available. By letter dated October 12, 1984, MARTA informed Riddle that it considered the contract terminated for cause owing to his failure to complete the project by February 4, 1984.

To establish its damages, MARTA submitted the affidavit of its manager of architecture setting forth his estimate of the expenditures which would be required to complete the project. The total amount of this estimate, which was based on the installation of the artwork already completed by Riddle and did not call for the fabrication of any new artwork, was $5,864. The trial court awarded damages to MARTA in this amount and further ruled that MARTA was entitled to possession of all the pieces of sculptured metal which Riddle had

fabricated but not delivered. *Held*:

1. Initially, Riddle contends that the trial court was without jurisdiction to rule on MARTA's summary judgment motion because, on January 31, 1983, before the contract between the parties was executed, he had filed a voluntary bankruptcy petition pursuant to Chapter 13 of Title 11 of the U. S. Code (11 USC §§ 301 et seq.; 1302 et seq.), thereby making the automatic stay provisions set forth in 11 USC § 362, which provides, in pertinent part, as follows: "(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of — (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; . . . (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; . . . (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title. . . ."

It is quite clear that subsections (1) and (6) of the above code section are not applicable to the present action, since the filing of the bankruptcy petition predated the existence of MARTA's breach of contract claim. Subsection (3) is similarly inapplicable, due to the operation of 11 USC § 362 (c) (1), which provides as follows: "(c) Except as provided in subsections (d), (e), and (f) of this section — (1) the stay of an act against property of the estate under subsection (a) of this section continues *until such property is no longer property of the estate*; . . ." (Emphasis supplied.) Riddle's Chapter 13 bankruptcy plan was confirmed by the bankruptcy court on May 23, 1983, well before the present action was filed. The property of the bankrupt thus re-vested in him at that time, pursuant to 11 USC § 1327 (b), which provides as follows: "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 USC § 1327 (b). It follows that the automatic stay created by 11 USC § 362 (a) (3) was lifted at that time and created no bar to the present action. See *In re Mason*, 45 BR 498, 12 BCD 527 (BC DC Ore. 1984), aff'd 51 BR 548; *In re Johnson*, 36 BR 958 (BC DC Utah 1983); *In re Bernstein*, 20 BR 595 (BC MD Fla. 1982). Accord *In re Ernst*, 45 BR 700, 12 BCD 893 (BC DC Minn. 1985).

2. The undisputed evidence of record supports the trial court's determination both that Riddle breached his contractual obligation to MARTA as a matter of law and that this breach resulted in monetary damage to MARTA in the amount of $5,864.

Riddle's contention that the delay in completing the project was caused by the changes requested by MARTA is negated by the undisputed evidence of record tending to show that these changes reduced rather than expanded the scope of the project. Furthermore, on January 23, 1984, after these changes had been ordered, Riddle represented to MARTA in writing that he would be able to complete the project within 30 days of receipt of the requested $1,477.33 payment, which payment was made to him on February 3, 1984.

Riddle's contention that timely completion of the project was prevented by MARTA's breach of an "implied obligation" to provide him with a secure storage space for his equipment and tools is negated by the language of the contract, which establishes no such obligation, and by the fact that the tools were not stolen until May of 1984, by which time the most recent completion deadline had already passed. Finally, we reject Riddle's contention that, having already paid virtually the entire contract price, MARTA evidenced an intention to abandon the contract by taking such actions as extending the completion deadline and authorizing the payment of additional funds to him to enable him to secure replacement tools.

For the above reasons, we hold that the trial court did not err in granting MARTA's motion for summary judgment.

*Judgment affirmed. Birdsong, P. J., and Sognier, J., concur.*

DECIDED JULY 15, 1986 —
REHEARING DENIED JULY 29, 1986.

*John J. Dalton, G. Craig Birchette*, for appellant.
*Elton W. Gogolin, Jr.*, for appellee.