A89A0232, A89A0233. METTER BANKING COMPANY
v. MILLEN LUMBER & SUPPLY COMPANY, INC. et al.;
and vice versa.
(382 SE2d 624)

SOGNIER, Judge.

Metter Banking Company (the Bank) brought suit against Millen Lumber & Supply Company, Inc. (Millen) and W. T. Wasden on a promissory note executed by Wasden in his capacity as president of Millen and guaranteed by Wasden individually. Millen and Wasden answered and counterclaimed in seven counts. Cross-motions for summary judgment were made, and the trial court granted each in part and denied each in part. Each party appeals from the grant of partial summary judgment to the opposing party.

The record reveals that on July 19, 1983, two notes at issue in this case were executed at the offices of the Bank. One was a note from Millen to the Bank for $300,000, secured by 60,000 shares of Millen stock which previously had been assigned to the Bank. That note was executed by Wasden pursuant to a corporate resolution authorizing him to do so, and also was personally guaranteed by Wasden. The second was a note from M. J. (Jack) Bowen, Jr. to the Bank for $300,000, which was secured by collateral already pledged to the Bank. The third instrument germane to this case executed at the Bank that day was a participation agreement between the Bank and Millen, giving Millen 100 percent participation in the note from

Bowen to the Bank.

It is uncontroverted that Bowen and Wasden knew each other, that both Bowen and Millen had been dealing with the Bank for many years, and that Dan Parrish, then president of the Bank, had been dealing with Bowen and his finances and making loans to Bowen privately as well as on behalf of the Bank. It is further undisputed that Bowen's farm account at the Bank was overdrawn almost $300,000 (which overdrafts had necessarily been approved by Parrish), and that the cashier's check issued by the Bank for $300,000 on Millen's note was endorsed by Wasden and deposited in Bowen's account to cover the overdraft. However, the parties' contentions as to the purpose and characterization of the three documents, the manner in which they came to be executed, and the extent of Wasden's knowledge about Bowen's financial condition conflict sharply. The record also does not reveal exactly when Millen became aware of Bowen's true financial situation. The Bank contends the $300,000 note executed by Millen was unrelated to the other two documents, and the participation agreement was executed as a favor to Millen, allowing it to share in Bowen's collateral previously pledged to the Bank on other loans, thus enabling Millen to feel more secure about a separate $300,000 loan from Millen to Bowen. Millen, on the other hand, contends the Bank sought its help in clearing the Bowen overdraft from its books, and that the proceeds of the $300,000 note signed by Millen were used to purchase 100 percent participation in Bowen's note to the Bank for $300,000.

Interest on Millen's July 1983 note was paid and the principal amount renewed at maturity in December 1983, with the note being signed in the same manner as the original. In May 1984, prior to the maturity date of the renewal note, Wasden suffered a heart attack and/or stroke which left him severely incapacitated. Nevertheless, the interest was paid and the note again renewed in July 1984. In February 1985 the Millen renewal note was in arrears, and a $10,000 payment was made toward the interest, with separate notes being signed for the remaining interest and for the principal balance. Both notes were executed in the same fashion as the original note and prior renewal notes. Wasden was declared incompetent and his wife named as his guardian on June 8, 1987, after the filing of this action.

Both the Millen renewal notes of February 1985 and the Bowen indebtedness to the Bank became seriously in arrears. Bowen's collateral was foreclosed upon by the Bank and sold for a total of $159,661.79. After deducting taxes owed and expenses, the Bank credited the Millen notes with half the remainder of the proceeds, amounting to $73,299.27, purportedly pursuant to the participation agreement. The Bank then made demand on Millen and Wasden pursuant to the February 1985 renewal notes, on indebtedness totalling

$416,234.65 as of February 1, 1988, including principal, interest and attorney fees. The Wasden family, acting in Wasden's behalf, refused payment, and this action ensued.

1. In Case No. A89A0232, the Bank contends the trial court erred by granting partial summary judgment in favor of Millen and Wasden on the issue of breach of the participation agreement as alleged in their counterclaims. We do not agree.

The trial court's grant of partial summary judgment to Millen and Wasden on this issue was based on its finding that the participation agreement had been breached. The agreement clearly and unambiguously obligated the Bank to notify Millen of any default by Bowen on his note. It is uncontroverted that Bowen defaulted on his note in September of 1984, and that the Bank did not notify Millen and Wasden of that default. In fact, the Bank itself did not begin foreclosure proceedings until one and one-half years later. This was a clear breach of the provision in the participation agreement requiring the Bank to "notify participant [Millen] immediately upon default by Borrower [Bowen] in any payment of principal or interest under Note." Although the Bank argues that there is evidence of record that Millen was notified of the foreclosure proceedings on the Bowen real estate, even assuming that notice was given it is irrelevant to this issue, because it is not notice of the foreclosure on the collateral that is at issue here but notice of Bowen's *default*. Similarly, we find the Bank's argument that no evidence was introduced to show that the collateral foreclosed on was the same as that which secured the note in which Millen participated irrelevant to the issue of breach of the participation agreement, because it is not the foreclosure which is questioned but lack of notice of the default.

The Bank not only failed to notify Millen of Bowen's default, as required by the agreement, it contributed to the impairment of that collateral by advancing additional monies to Bowen after the date of the participation agreement without requiring additional collateral, thereby lessening the ability of the collateral to cover the portion of Bowen's debt in which Millen was participating. Consequently, we agree with the trial court that no issue of fact remained as to breach of the agreement, and the trial court properly granted partial summary judgment to Millen and Wasden on the issue of breach of the participation agreement. See generally *Bowers v. Safeco Ins. Co. of America*, 187 Ga. App. 229, 231 (2) (369 SE2d 547) (1988).

Moreover, although the trial court did not base its grant of partial summary judgment to Millen as to breach of the participation agreement on this ground, the language in the participation agreement gives Millen a participation of $300,000 in Bowen's note to the Bank, which was for $300,000 — i.e., a 100 percent share in the note and accordingly a 100 percent share in Bowen's collateral. Although

the parties do not agree about the interpretation of this language, the language itself is clear, and "no construction is 'required or even permissible when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation.' [Cits.]" *Hopkins v. Hopkins*, 186 Ga. App. 530, 531 (367 SE2d 825) (1988). Accordingly, the Bank's crediting Millen with only half the proceeds of the sale was a breach of the participation agreement as well.

2. In Case No. A89A0233, the cross-appeal, Millen appeals from the trial court's grant of partial summary judgment to the Bank on the issue of Millen's liability for the principal amount of its note, and as to Millen's defense and counterclaim seeking to block the Bank from pursuing an action for a deficiency judgment. Millen contends the trial court's grant of partial summary judgment to the Bank on the issue of Millen's liability for the principal amount of its note was erroneous, as it had the right to rescind the transaction because the Bank fraudulently induced Wasden to enter into this transaction by concealing its knowledge of Bowen's true financial condition, or, alternatively, because Wasden was incompetent to enter into the transaction. Although the trial court found that issues of fact remained regarding these two allegations, both of which bear on Millen's right to rescind the transaction, it reasoned that those fact questions did not prevent the grant of partial summary judgment to the Bank on its claim for recovery of the principal amount of the loan to Millen, because even should fraud in the inducement or incompetency be found, rescission of the transaction would require tender of the original consideration, necessitating repayment of the principal amount.

We agree with the trial court that issues of fact remain, but do not agree that Millen would be liable for the principal regardless of their resolution.

(a) It is true that the general rule is that "[a] contract may be rescinded at the instance of the party defrauded; but, in order to rescind, the defrauded party must promptly, upon discovery of the fraud, restore or offer to restore to the other party whatever he has received by virtue of the contract if it is of any value." OCGA § 13-4-60. "To effect a complete rescission, all the parties must be returned as nearly as possible to the *status quo ante*; there is no room for one party to have its cake and eat it, too. Ordinarily, then, one cannot in equity seek to rescind a contract [here the note from Millen to the Bank] on the ground of fraud, and at the same time retain the benefits derived from that contract [here the $300,000 cashier's check received by Millen from the Bank]. [Cits.]" *Corbitt v. Harris*, 182 Ga. App. 81, 82 (354 SE2d 637) (1987). However, no tender is required under two circumstances which Millen argues are applicable here: where nothing of any value is received by the party seeking to rescind

(see *Thomson v. Walter*, 160 Ga. App. 542, 544 (3) (287 SE2d 562) (1981)); and where the amount received under the contract sought to be rescinded may be less than the amount actually due the party seeking to rescind. See *Corbitt*, supra at 83.

Millen argues that it received nothing of value because it is undisputed that the $300,000 cashier's check, the proceeds of its note, was deposited in *Bowen's* account to cover the overdraft, thus making Bowen and the Bank, rather than Millen, the beneficiaries of the transaction. Millen further alleges that was the *only* $300,000 which changed hands that day — that the Bowen note to the Bank was for the $300,000 deposited in Bowen's account by Millen. We need not consider Millen's second argument on this question (that the Bank's potential exposure to Millen might exceed the principal amount of the note) because we find that the parties' characterization of the transactions involved are so disparate that fact questions necessarily exist for jury determination as to whether Millen actually received anything of value which should have been tendered to the Bank before rescinding the transaction. Therefore, the trial court erred by deciding as a matter of law that Millen would be liable for the principal amount even if rescission was appropriate. See generally *Virgil v. Kapplin*, 187 Ga. App. 206, 207-208 (1) (369 SE2d 808) (1988).

In *Scott v. Citizens Bank of Americus*, 188 Ga. App. 618 (373 SE2d 633) (1988), (cert. granted), cited by the Bank, this court held that in a suit on a promissory note the defense of failure of consideration was not available to the appellant despite the undisputed fact that he received none of the proceeds of the note, because he was an accommodation party, to whom the defense of failure of consideration is unavailable. Id. at 620 (1). However, unlike the appellant in *Scott*, Millen does not assert the defense of failure of consideration, but rather claims rescission is permissible without tender. Accordingly, *Scott* is not applicable here.

(b) It is also true that contracts of a mentally incompetent person who has not been adjudicated incompetent are voidable at the option of a guardian or representative, OCGA § 13-3-24, and generally in such cases where the contract is voided restitution is required. However, if the other party was aware that it was contracting with an incompetent, no tender is required. *Dean v. Goings*, 184 Ga. 698 (2) (192 SE 826) (1937); *Cheves-Green & Co. v. Horton*, 177 Ga. 525 (2) (170 SE 491) (1933). A fact question remains in the case sub judice not only as to whether Wasden was incompetent at the time of making or renewing the note, as conceded by the trial court, but also as to whether the Bank knew of the alleged incompetency so as to make tender of the principal amount of the note unnecessary to effect rescission. "Where [fact] issues are present, the statutory requirements for summary judgment are not fulfilled. [Cit.] 'Summary judgments

should only be granted where, construing *all* inferences against the movant, it yet appears without dispute that the case can have but a single outcome.' [Cits.]" *Bragg v. Missroon*, 186 Ga. App. 803, 805-806 (368 SE2d 564) (1988).

3. In the cross-appeal, Millen also contends the trial court erred by granting partial summary judgment to the Bank on Millen's technical defense that the Bank was seeking to collect a deficiency judgment from which it was barred by its conduct in disposing of the collateral, both real and personal. We find no merit in this contention, as we agree with the trial court that the Bank's actions in seeking repayment of these notes did not amount to the collection of a deficiency. A deficiency judgment is so called because it recovers the difference (deficiency) between the price for which collateral is sold and the unpaid balance remaining on the debt for which the collateral was pledged. See OCGA § 11-9-504 (2); *Granite Equip. Leasing Corp. v. Marine Dev. Corp.*, 139 Ga. App. 778 (1) (230 SE2d 43) (1976). Although Millen may eventually be successful in persuading a jury that, for one or more of various reasons, it is not liable for repayment of the notes it executed in favor of the Bank, and may also have a claim against the Bank for impairing Bowen's collateral by failing to make a prompt disposition after default, it may not incorporate such claims into the statutory remedies created by OCGA § 11-9-507 for violations of the technical requirements of OCGA § 11-9-504, thereby disregarding completely the fact that its own collateral, the 60,000 shares of stock it pledged to secure its notes, has not been foreclosed on or sold. As a matter of law, the Bank is not here seeking a deficiency judgment. Accordingly, the provisions of OCGA §§ 11-9-504 and 44-14-161 have no application here, and the trial court did not err by granting partial summary judgment to the Bank on this issue. See generally *Riddle v. MARTA*, 180 Ga. App. 33, 35-36 (2) (348 SE2d 483) (1986).

*Judgment affirmed in Case No. A89A0232; judgment affirmed in part and reversed in part in Case No. A89A0233. Banke, P. J., and Pope, J., concur.*

### ON MOTION FOR REHEARING.

On Motion For Rehearing, the Bank contends this court has overlooked the fact that Wasden was not a party to the participation agreement, but signed it only in his representative capacity on behalf of Millen Lumber Company, and therefore may not assert breach of the participation agreement as a defense to his personal liability as guarantor of the Millen note to the Bank.

Recognizing that Wasden was not a party to the participation agreement, we do not agree that he is barred from asserting the

breach as a defense. "[A] guarantor may assert all defenses to a contract which would be available to his principal, with the exception of personal defenses, such as infancy, bankruptcy and incapacity. [Cit.]" *Jones v. Dixie O'Brien &c. Corp.*, 174 Ga. App. 67, 68 (1) (329 SE2d 256) (1985). Thus, if breach of the participation agreement may be asserted as a defense by Millen, it may be asserted by Wasden as well, unless by the terms of the guaranty signed by him he agreed to waive it. See id. at 69 (2).

Turning to the language of the guaranty, we find that Wasden agreed to waive only his right to require the Bank to take action against the principal as required by OCGA § 10-7-24 "or any other statutory provision of similar import." Breach of the participation agreement is clearly not a "statutory provision of similar import." Accordingly, there was no express waiver of the defense of the Bank's breach of the participation agreement, and Wasden is entitled to assert that breach even though he was not a party to the agreement, because it is a defense that is available to Millen Lumber.

DECIDED MAY 5, 1989 —
REHEARING DENIED MAY 23, 1989.

*Doremus, Jones, Reynolds & Smith, C. Van Reynolds, Bobby T. Jones*, for appellant.
*Gerald M. Edenfield, Susan W. Cox*, for appellees.